

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00490-CR

DEMARKOUS CLAY                                                   APPELLANT

V.

THE STATE OF TEXAS                                             STATE

----------

### FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

----------

## OPINION

----------

Appellant Demarkous Clay challenges the trial court's decision to proceed to adjudication of the offense of burglary of a habitation and the resulting ten-year sentence. Appellant argues that the trial court abused its discretion by admitting records from Louisiana concerning his community supervision, that the admission of those records violated his Sixth Amendment right to confrontation, and that the trial court erred by refusing to recognize his economic defense to his failure to pay restitution of $275 per month. We affirm.

**Background Facts**

In 2007, a Denton County grand jury indicted appellant for burglary of a habitation.[1] In 2008, appellant pled guilty, and the trial court placed him on ten years' deferred adjudication community supervision. The order of deferred adjudication contained many conditions, including that appellant report monthly in person to his community supervision officer, pay $32,000 in restitution at the rate of $275 per month, complete a "drug/alcohol evaluation through an agency which offers such services" within thirty days of the order, and participate in a theft diversion class at the direction of his community supervision officer.

In 2010, the State filed a motion to proceed with adjudication of appellant's guilt, alleging that appellant had violated each of the conditions described above, among others. Appellant retained counsel. At the contested hearing, Rhett Wallace, an employee of the Denton County probation department, testified that in February 2008, appellant received a copy of his community supervision conditions and that, on the same day, he requested that his community supervision be transferred to Louisiana, and it was. Wallace then testified to appellant's failure to meet some of the conditions of his community supervision. Much of Wallace's testimony was based on information that had been generated by Louisiana officials and later sent to Denton County. Appellant objected that Wallace's testimony was based on hearsay; in response, the State offered the

---

[1]*See* Tex. Penal Code Ann. § 30.02(a)(1) (West 2011).

raw records from Louisiana that purport to be community supervision records relating to appellant, and the State asserted the business records exception as the basis for admission.[2]  Appellant argued that although Wallace was a custodian of probation records for Denton County, the Louisiana documents were inadmissible as hearsay because Wallace had no knowledge as to how the documents were generated and could not confirm the trustworthiness or reliability of the records.  The trial court overruled appellant's objection and admitted the exhibit containing the Louisiana records "as a business record and a government record."[3]

At the end of the contested revocation hearing, the trial court found that appellant had violated each of the conditions of his community supervision described above.  The court, therefore, revoked appellant's community supervision, adjudicated him guilty of burglary of a habitation, and sentenced him to ten years' confinement.  Appellant brought this appeal.

## The Forfeiture of Appellant's Complaints

In three issues, appellant contests the trial court's decision to revoke his community supervision and adjudicate him guilty.  Appellant's first two issues depend on the correctness of the trial court's admission of the Louisiana records.

---

[2]See Tex. R. Evid. 803(6).

[3]The first issue of appellant's brief focuses on rule of evidence 803(6); the brief does not directly discuss whether the Louisiana records were admissible as public records and reports under rule 803(8).  See Tex. R. Evid. 803(8).

3

As we explained in *Cherry v. State*,

> We review an order revoking community supervision under an abuse-of-discretion standard. In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant is the same individual who is named in the judgment and order of probation, and then must prove that the defendant violated a term of probation as alleged in the motion to revoke.
>
> In a community supervision revocation hearing, the trial judge is the sole trier of fact and determines the credibility of the witnesses and the weight to be given their testimony. We review the evidence in the light most favorable to the trial court's ruling. If the State fails to meet its burden of proof, the trial court abuses its discretion in revoking the community supervision.

215 S.W.3d 917, 919 (Tex. App.—Fort Worth 2007, pet. ref'd) (citations omitted).

"Proof by a preponderance of the evidence of any *one* of the alleged violations of the conditions of community supervision is sufficient to support a revocation order." *Cantu v. State*, 339 S.W.3d 688, 691–92 (Tex. App.—Fort Worth 2011, no pet.).

Appellant contends that the trial court abused its discretion by revoking his community supervision because the revocation was based on information contained in the Louisiana records, which appellant asserts were inadmissible. To preserve a complaint for our review, however, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Layton v. State*, 280 S.W.3d 235, 238–39 (Tex. Crim. App. 2009). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the

4

complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009). Preservation of error is a systemic requirement that this court should review on its own motion. *Archie v. State*, 221 S.W.3d 695, 698 (Tex. Crim. App. 2007).

Appellant objected to the admissibility of the Louisiana records, and as part of that objection, appellant's counsel had a lengthy exchange with the trial court concerning whether the records were excepted from hearsay under rule of evidence 803(6). We have no doubt that this objection met the requirements of making the trial court aware of appellant's complaint and sufficiently explaining the basis for it. *See Ford*, 305 S.W.3d at 533. But before and after the exchange, appellant did not object to many of the State's questions, and much of Wallace's testimony, concerning the contents of the records. For example, before the exchange, Wallace testified without objection, from information contained in the records, that appellant had reported to community supervision in Louisiana and that he had violated condition (b) of his community supervision, which required him to avoid the use of illegal narcotics, barbiturates, or controlled substances. After the exchange, Wallace testified on direct examination, based on data in the records, that appellant had tested positive for cocaine in June 2009, that he had failed to report to the Louisiana probation department during

5

several months from 2008 through 2010, and that he had not completed an alcohol evaluation or a theft diversion class.[4] Wallace also testified about some facts contained in the Louisiana records on cross-examination by appellant's counsel.

With exceptions that do not apply here, to preserve error, a party must continue to object each time the objectionable evidence is offered.[5] *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003) (citing *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991)); *Fuentes v. State*, 991 S.W.2d 267, 273 (Tex. Crim. App.), *cert. denied*, 528 U.S. 1026 (1999). A trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (explaining that Texas

---

[4]Appellant testified later in the hearing in an attempt to explain or excuse these facts. For example, he stated that when he took two drug tests on the same day in June 2009, one was positive and the other was negative. He also testified that he asked his Louisiana probation officer about the drug and alcohol evaluation and that the officer set the class for a time that appellant was working. Appellant does not contest, however, that the facts revealed through Wallace's testimony are sufficient to support the trial court's revocation decision under the preponderance of the evidence standard; he contends only that evidence of the facts should not have been admitted.

[5]For example, "it is settled that when a *pre-trial* motion to suppress evidence is overruled, the accused need not subsequently object to the admission of the same evidence at trial in order to preserve error." *Fuller v. State*, 827 S.W.2d 919, 930 (Tex. Crim. App. 1992) (emphasis added), *cert. denied*, 509 U.S. 922 (1993); *see Williams v. State*, 834 S.W.2d 502, 507 (Tex. App.—Fort Worth 1992, pet. ref'd). Appellant did not seek to suppress evidence associated with the Louisiana records prior to the trial court's revocation hearing.

6

applies the "futility rule," meaning that despite a trial court's ruling that evidence is admissible, a party must keep making futile objections on pain of waiver). This rule applies whether the other evidence was introduced by the defendant or the State. *Id.*

The Texarkana Court of Appeals analyzed an error preservation issue similar to the one presented in this case in *Perry v. State*, 957 S.W.2d 894 (Tex. App.—Texarkana 1997, pet. ref'd). During Perry's trial for criminal nonsupport, the trial court admitted, over Perry's hearsay objection, an exhibit containing a summary of child support that had accrued and payments that were due. *Id.* at 896. An employee of the attorney general's office then testified, without objection, that the summary showed that Perry was $16,650 in arrears. *Id.* The Texarkana court held that the testimony about the exhibit after its admission forfeited any alleged error, explaining,

> A party desiring to complain about particular evidence must object each time that evidence is offered, or the objection is waived. Although Perry objected to the admission of the calculation summary report when it was offered by the State, he did not object when the witness testified about the contents of the report. Thus, he did not preserve error.

*Id.* (citations omitted).

Our own court recently reached the same conclusion under similar facts. *See Sikes v. State*, No. 02-10-00029-CR, 2011 WL 4711998 (Tex. App.—Fort Worth Oct. 6, 2011, no pet.) (Dauphinot, J.) (mem. op., not designated for publication). Sikes argued that a trial court abused its discretion by admitting a

7

letter that he wrote to his father; Sikes claimed that the letter was hearsay and was not relevant. *Id.* at *6. At trial, Sikes had objected to the admission of the letter, but when a witness later read the contents of the letter to a jury, Sikes failed to object again. *Id.* We noted that Sikes had "neither requested nor received a running objection to the evidence," and held,

> To preserve error, a party must continue to object each time the objectionable evidence is offered. A trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling. This rule applies whether the other evidence was introduced by the defendant or the State. Consequently, . . . [Sikes] forfeited any error in the admission of the letter . . . .

*Id.*

Thus, because Wallace provided testimony about the Louisiana records without objection before and after appellant's objection to the admission of the records and because appellant failed to obtain a running objection,[6] we conclude that he forfeited his objection to the records' admission.[7] *See Martinez*, 98 S.W.3d at 193; *Perry*, 957 S.W.2d at 896; *see also Ratliff v. State*, 320 S.W.3d

---

[6]A running objection would have, of course, relieved the trial court of the burden of "defense counsel jumping up and down like a Jack-in-the-Box at each mention of the documents complained of." *See* Dissenting Op. at 8.

[7]We note that appellant did not argue in the trial court that his Sixth Amendment right to be confronted with the witnesses against him had been violated by admission of the Louisiana records. For this reason as well, he forfeited that complaint. *See Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) ("An objection on hearsay does not preserve error on Confrontation Clause grounds."); *Robinson v. State*, 310 S.W.3d 574, 577–78 (Tex. App.—Fort Worth 2010, no pet.).

8

857, 861 (Tex. App.—Fort Worth 2010, pet. ref'd) ("If the defendant waits until the State offers the evidence at trial, the objection to the evidence must be made before a witness gives substantial testimony about it."); *Mai v. State*, 189 S.W.3d 316, 324 (Tex. App.—Fort Worth 2006, pet. ref'd) ("We hold that Appellant failed to preserve error . . . by not repeating the objection again each time the State asked Officer Richie to read from or refer to the transcript."). Based on the facts contained in those documents and Wallace's unobjected-to testimony about them, we hold that the trial court did not abuse its discretion by revoking appellant's community supervision and adjudicating him guilty. *See Cherry*, 215 S.W.3d at 919. We overrule appellant's first two issues.

Because the State's exhibit and Wallace's testimony support several violations of appellant's community supervision, and because only one violation is sufficient to support the trial court's revocation decision, we need not address appellant's third issue, in which he contends that revocation on the ground that he failed to pay restitution when not having sufficient ability to do so was improper. *See* Tex. R. App. P. 47.1; *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980).

## Conclusion

Having overruled appellant's dispositive issues, we affirm the trial court's judgment.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT, J.; and WILLIAM BRIGHAM (Senior Justice, Retired, Sitting by Assignment).

DAUPHINOT, J., filed a dissenting opinion.

PUBLISH

DELIVERED: February 16, 2012



# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-10-00490-CR

DEMARKOUS CLAY                                                                    APPELLANT

V.

THE STATE OF TEXAS                                                                      STATE

----------

FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

----------

## DISSENTING OPINION

----------

Clearly, the Louisiana records and testimony about them were inadmissible, and the trial court abused its discretion by admitting the records and testimony into evidence. Without those records and testimony about them, the State failed to sustain its burden of proof. Consequently, the trial court abused its discretion by adjudicating Appellant's guilt. I would, therefore, reverse the trial court's judgment and remand this case to the trial court.

The majority, however, holds that Appellant forfeited error by not objecting to each and every reference to the complained-of documents. I must respectfully dissent from the majority opinion because I believe the majority places form over substance.

At the adjudication hearing, Rhett Wallace of the Denton County Community Supervision and Corrections Department (DCCSCD) testified that Appellant's community supervision had been transferred to Louisiana at Appellant's request. Wallace then testified about Appellant's failure to meet some of the conditions of his community supervision.

Much of Wallace's testimony was based on information purported to have been sent to his department from the Interstate Commission for Adult Offender Supervision (ICAOS); the information purported to be information that ICAOS had received from the State of Louisiana. Appellant objected that Wallace's testimony was based on hearsay; in response, the State offered the raw records, purportedly from Louisiana, that purport to be community supervision records relating to Appellant and asserted the business records exception as the basis for admission. The records contain no affidavit from the custodian of the records, and Wallace, who testified that he was the DCCSCD custodian of records and that he received the records from Louisiana, was unable to testify who had made the record entries, whether the person had personal knowledge of the contents of the entries, whether the entries were made at or near the time of the events

2

recorded, or indeed anything about how the records were made or the source of the information.

Appellant argued below that although Wallace was the custodian of records for DCCSCD, some of the information in the file purportedly had been provided by Iberia Parish in Louisiana, and Wallace had no knowledge as to the trustworthiness or reliability of that information. The trial court overruled the objection and admitted the records in the file "as a business record and a government record."

In order to be admissible as a business record, there must be evidence that the "memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, [was] made at or near the time by, or from information transmitted by, a person with knowledge" and "kept in the course of a regularly conducted business activity" when it was "the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10) [of the rules of evidence]."[1]

The documents were also admitted as a public record. Rule 803(8) provides an exception to the hearsay rule for public records and reports, that is,

> [r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies setting forth:

---

[1]Tex. R. Evid. 803(6).

3

(A) the activities of the office or agency;

(B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding in criminal cases matters observed by police officers and other law enforcement personnel; or

(C) in civil cases as to any party and in criminal cases as against the state, factual findings resulting from an investigation made pursuant to authority granted by law;

unless the sources of information or other circumstances indicate lack of trustworthiness.[2]

Before a public record can be admitted as an exception under the hearsay rule, the party offering the document must show that it is authentic.[3] A document is considered authentic if a sponsoring witness is competent to vouch for its authenticity and vouches for its authenticity, or if the document meets the requirements of self-authentication in rule 902 of the rules of evidence.[4] As our sister court in Dallas explained, albeit in an unreported case,

> Benavides did not, and could not, testify that he or any probation officer had any knowledge on how Heine prepared the letter or whether she had personal knowledge of the events she recorded in the letter. Moreover, because a government office collects a letter in its files does not give the letter sufficient "indicia of reliability" for purposes of admissibility under the business record

---

[2]Tex. R. Evid. 803(8).

[3]Tex. R. Evid. 901(a); *Porter v. Tex. Dep't of Pub. Safety*, 712 S.W.2d 263, 265 (Tex. App.—San Antonio 1986, no writ); *see also Henderson v. Heyer–Schulte Corp.*, 600 S.W.2d 844, 850 (Tex. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.) (holding trial court properly excluded document that witness could not identify or authenticate).

[4]Tex. R. Evid. 902; *Castro v. Sebesta*, 808 S.W.2d 189, 195 (Tex. App.—Houston [1st Dist.] 1991, no writ) (op. on reh'g).

4

exception to the hearsay rule. Because the State did not authenticate the Heine letter as a business record exception to the hearsay rule and no evidence established the reliability or trustworthiness of the facts described in the letter, we conclude the letter was inadmissible hearsay.[5]

The documents in question in the case now before this court did not satisfy the requirement of reliability to meet either the business record exception or the public record exception. The documents were neither authenticated nor self-authenticating. No clerk or any other person had certified them as public documents. They were just a stack of papers that nobody could or did vouch for, except to say that they had been received and were part of the Denton County file. Anyone can place any kind of letterhead on anything, but having some anonymous person designate a piece of paper as a public document does not convert it into a public document.

Because the State laid no predicate to show the reliability of the documents purportedly from Louisiana, the trial court abused its discretion by admitting them, whether as business records or government documents.

Appellant's objections to the documents purporting to come from Louisiana and to the testimony about those documents take up fifteen pages in the reporter's record. The majority calls this waiver, perhaps because Appellant did

_____

[5]*Estrada v. State*, Nos. 05-96-00752-CR, 05-96-00753-CR, 1999 WL 521683, at *7 (Tex. App.—Dallas July 23, 1999, pet ref'd as untimely filed) (op. on reh'g) (not designated for publication) (citations omitted from excerpt, but relying on former rule of criminal evidence 803(6); *Porter v. State*, 578 S.W.2d 742, 746 (Tex. Crim. App. 1979); and *Philpot v. State,* 897 S.W.2d 848, 852 (Tex. App.—Dallas 1995, pet. ref'd)).

not use the magic word "suppression."  As we are all aware, a defendant is not required to continue to object to evidence objected to in a motion to suppress that is overruled.[6]

The purpose of an objection is merely to call to the trial court's attention the reason a document, a piece of evidence, or testimony is not admissible.  As the Texas Court of Criminal Appeals has repeatedly stated,

> To properly preserve an issue concerning the admission of evidence for appeal, "a party's objection must inform the trial court why or on what basis the otherwise admissible evidence should be excluded."  However, a party need not spout "magic words" or recite a specific statute to make a valid objection.  References to a rule, statute, or specific case help to clarify an objection that might otherwise be obscure, but an objection is not defective merely because it does not cite a rule, statute, or specific case.  As this Court stated in *Lankston v. State*,
>
>> Straightforward communication in plain English will always suffice.  . . . [A]ll a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.
>
> The objection must merely be sufficiently clear to provide the trial judge and opposing counsel an opportunity to address and, if necessary, correct the purported error.  In making this determination, *Lankston* states that an appellate court should consider the context in which the complaint was made and the parties' understanding of the complaint at the time.[7]

---

[6]*Fuller v. State,* 827 S.W.2d 919, 930 (Tex. Crim. App. 1992), *cert. denied*, 509 U.S. 922 (1993).

[7]*Ford v. State,* 305 S.W.3d 530, 533 (Tex. Crim. App. 2009) (citations omitted).

We have before us a revocation hearing based on a set of documents purporting to have come from a probation department in Louisiana. Revocations are heard by a trial court and never by a jury. Although Appellant never used the magic word "suppress," he clearly, and at length, objected to the admission of the documents and to any testimony about the documents and their contents. Once the trial court overruled Appellant's objections, the documents were in evidence. Once the trial court ruled that Wallace would be allowed to testify from those documents, he was going to be allowed to testify from the documents. This is not a case in which the appellant stated that he had no objection either to the documents or to the testimony. Nor is this a case in which the State offered the same evidence through a different source.

The majority suggests that Appellant should have filed a pretrial or pre-hearing motion to suppress. A motion to suppress is merely a specialized objection that allows a defendant in a criminal case to object to the admission of evidence either pretrial or during trial, to have his objection heard outside the presence of the jury, and to preserve his complaint without having to object before the jury.[8] It also affords opposing counsel an opportunity to remove the objection or supply other evidence.[9]

---

[8]*Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981) (op. on reh'g) (citing *Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977) (op. on reh'g)); *Roberts v. State*, 545 S.W.2d 157, 158 (Tex. Crim. App. 1977).

[9]*Zillender*, 557 S.W.2d at 517.

Of course, a motion to suppress may be offered in the form of a written motion filed pretrial or during trial, or it may be made orally in the form of an objection heard outside the presence of the jury. But a community supervision revocation hearing has no jury. Does the majority suggest that when there is no jury only a pretrial motion to suppress will preserve a defendant's objection to evidence? Does the majority really suggest that either the trial court or the prosecutor was not aware of Appellant's complaint? Does the majority really suggest that any trial court hearing a motion to revoke community supervision must be burdened by defense counsel jumping up and down like a Jack-in-the-Box at each mention of the documents complained of by the only witness to testify for the State, the very same witness whose testimony had been objected to by the defendant during the fifteen pages of objection?

After the trial court overruled Appellant's objections, Wallace testified from the objected-to documents that while in Louisiana, Appellant had tested positive for cocaine in violation of the conditions of his community supervision and had failed to report for two months in 2008, for all of 2009 except June (when he tested positive for cocaine), and for the two months in 2010 prior to the State's filing the motion to proceed to adjudication. Wallace also testified that Appellant had failed to complete his drug and alcohol evaluation and his theft diversion class while in Louisiana. Again, his testimony was based on the objected-to documents and not on his personal knowledge or records that he or anyone else present could vouch for.

8

When evidence is improperly admitted, a defendant does not waive his objection to that testimony, curing its improper admission, by seeking to meet, destroy, or explain the improperly admitted evidence by introducing rebutting evidence.[10] Appellant testified in an attempt to explain what had happened in Louisiana. Appellant testified that when he tested positive for cocaine, he immediately requested and received another test, which came back negative.

Appellant was also required to maintain employment and to report to his community supervision officer as other conditions of community supervision. Reporting, given his work schedule, would have caused him to lose his job in violation of the conditions of community supervision. Maintaining his employment caused him to fail to report. Specifically, for the period he failed to report, Appellant testified that he worked on an offshore drilling rig for long stretches at a time, and when not working offshore, he worked twelve-hour shifts from 6 a.m. to 6 p.m. He testified that the Louisiana officials scheduled his reporting time for noon but that his community supervision officer knew that he would not be reporting during that time. Appellant stated that on other occasions when he did not report but was not at work, his community supervision officer completed home visits instead. Appellant also testified that his community supervision officer was later fired for improprieties.

---

[10] *Leday v. State*, 983 S.W.2d 713, 719 (Tex. Crim. App. 1998) (citing *Thomas v. State*, 572 S.W.2d 507, 512 (Tex. Crim. App. 1978)).

Other than Appellant's attempt to meet, destroy, or explain the evidence from Louisiana by introducing rebutting evidence, no admissible evidence supported the trial court's ruling on the State's motion to proceed to adjudication.

The State argues that the evidence was sufficient to prove the allegation that Appellant failed to make restitution because those records were within the knowledge of Wallace. The State alleged that Appellant violated the term of community supervision that ordered him to

> [p]ay restitution in the amount of $32,000.00 as determined by the [DCCSCD]; said amount of restitution or property due (to be delivered to the [DCCSCD] for transfer to the victim or other person OR to be made directly to the victim or other person) in installments of $275.00 per month, beginning on or before the 20th day of March, 2008, and a like payment on the same day of each month thereafter until fully paid.

The State alleged in its motion to adjudicate Appellant's guilt that Appellant

> [v]iolated said term and condition in that he failed to pay $275.00 toward payment of his restitution on or before the 20th day of June 2008, October 2008; March 2009, June 2009, September 2009, October 2009, November 2009, December 2009; January 2010, and February 2010.

The record reflects that although Appellant made no payment in June 2008, he paid $225 in July 2008 and made two payments in August 2008. He paid $325 in September 2008. The record is silent as to October 2008 and shows a $200 payment in November 2008. The record shows that Appellant paid $275 in January 2009 and $470 in February 2009 but made no payment in March. He paid $275 in April 2009, $175 in May 2009, nothing in June 2009,

10

$250 in July 2009, $275 in August 2009, nothing in September 2009, and $100 in October 2009. He made no further payment until April 2010 when he paid $650.

Appellant testified that he had been unable to make some of his payments because he had been out of work and because he was making low wages and supporting his dependents. The testimony regarding inability was uncontroverted.

The State argues that an inability to pay, while still relevant to the State's allegations of nonpayment of supervision fees and court costs, is immaterial to the State's allegation regarding restitution, citing an unpublished Austin Court of Appeals case.[11] The State bases its argument on the fact that the Texas Legislature omitted restitution and fines from article 42.12, section 21(c) of the Texas Code of Criminal Procedure.[12] Revoking the community supervision of any defendant for failure to comply with an impossible condition of community supervision cannot withstand scrutiny through the lens of due process and equal protection.[13] Although the legislature has not enumerated impossibility of compliance as a defense to revocation, due process and equal protection demand it. Failure to comply with a requirement that a defendant on community supervision report to a nonexistent place or do an act on a nonexistent date

[11]*See Sierra v. State*, No. 03-09-00664-CR, 2009 WL 2902706, at *3 (Tex. App.—Austin Aug. 26, 2009, no pet.) (mem. op., not designated for publication).

[12]Tex. Code Crim. Proc. Ann. art. 42.12, § 21(c) (West Supp. 2011).

[13]*See* U.S. Const. amends. V, XIV; Tex. Const. art. I, § 19; Tex. Code Crim. Proc. Ann. art. 1.04 (West 2005).

11

cannot, alone, justify revocation. A better reasoned approach is that voiced by the Texas Court of Criminal Appeals in *Ex parte Gonzales*:

> [A]t a minimum, a trial court may not order a defendant confined for failure to repay the costs of his legal defense pursuant to art. 26.05(e) unless the court considers the defendant's ability to make the payment. The trial court's power to order reimbursement should be limited to the extent a defendant is reasonably able to do so. *See* art. 26.05(e) (stating "the court shall order the defendant to pay the amount that it finds the defendant is able to pay").[14]

Although ability to comply is not explicitly to be considered pursuant to article 42.12, the underlying constitutional principles discussed by the *Gonzales* court still apply.

Here, Appellant testified without contradiction that he had been without work and that when he did work, he earned about $800 per month. He testified that he was supporting his dependents, as required by the conditions of his community supervision.

I agree with the State that when failure to pay is not the only ground alleged for revocation, the State does not bear the burden of proving ability to pay absent a claim of inability to pay. But when, as here, the defendant on community supervision raises inability to pay as his defense to failure to pay and offers some proof, the State must prove ability to pay. The State did not sustain this burden, especially in light of the State's willingness to accept late payments

---

[14]*Ex parte Gonzales,* 945 S.W.2d 830, 834 (Tex. Crim. App. 1997).

12

and Appellant's testimony that his Louisiana community supervision officer told him to pay what he could.

Because admissible evidence did not otherwise satisfy the State's burden of proof, I would hold harmful the trial court's error in admitting the documents purporting to come from the Louisiana community supervision department and the testimony about them and further hold that the trial court abused its discretion by adjudicating Appellant's guilt. I would therefore reverse the trial court's judgment and remand this case to the trial court. Because the majority does not, I respectfully dissent.

LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED: February 16, 2012

13