

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 02-11-00364-CR**
**NO. 02-11-00365-CR**

VICENTE ARELLANO-
SANCHEZ

APPELLANT

V.

THE STATE OF TEXAS

STATE

------------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In a single point, Appellant Vicente Arellano-Sanchez appeals his sexual

assault and prohibited sexual conduct convictions.  We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Procedural Background

A jury convicted Arellano-Sanchez in trial court cause number F-2010-2315-E (appellate cause number 02-11-00364-CR) of two counts of sexual assault of his biological daughter Y.A. and three counts of prohibited sexual conduct with Y.A. and assessed twenty years' confinement for each count as punishment. *See* Tex. Penal Code Ann. §§ 22.011, 25.02 (West 2011). In trial court cause number F-2010-2316-E (appellate cause number 02-11-00365-CR), the jury convicted him of four counts of sexual assault of his biological daughter L.A. and three counts of prohibited sexual conduct with L.A. and assessed twenty years' confinement on each count as punishment. *See id.* §§ 22.011, 25.02. The trial court entered judgment accordingly and set Arellano-Sanchez's sentences for each count in each case to run consecutively with each other and for the sentences in F-2010-2315-E to run consecutively to the sentences in number F-2010-2316-E.

## III. Discussion

In his sole point, Arellano-Sanchez complains that the trial court abused its discretion by admitting evidence that he spanked L.A. and Y.A. with a cable cord because "it constituted character assassination" and was "overly prejudicial, irrelevant[,] and immaterial" under rules of evidence 403 and 404(b). *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g) (setting out abuse of discretion standard).

2

The record reflects that the testimony at issue occurred immediately after L.A. testified that to punish Y.A. for breaking one of his rules, Arellano-Sanchez shaved Y.A.'s head.

Q. Did you ever get spankings from your dad?

[Defense counsel]: Objection, Your Honor, *as to relevance.*

THE COURT: I didn't hear your objection.

[Defense counsel]: *Not relevant.*

THE COURT: Tell me the relevance.

[Prosecutor]: Your Honor, when she talks about these spankings, it's also going to go further to set the framework of how they were inappropriate, and it will also go as to why there's a delay in the outcry, why she didn't tell what was going on.

THE COURT: I'll overrule the objection.
You can answer the question.

Q. Did your dad ever give you spankings?

A. Yes, he did.

Q. Tell us about that.

A. He was—if it was a minor offense, he would spank us with his sandal, but if it was—because if we broke a—one of the rules he had, like not talking to boys, he spanked us with a—a cable like— like the cable that you connect to the TV.

Q. Did they ever leave any marks?

A. Yes. The—they left—the cable leaves red marks that later swell a little.

Q. What were some of the rule violations or offenses or whatever you want to call them that would lead to a spanking with the cable?

3

A. If—if he ever found out that my sister had a boyfriend or that I—I was thinking or liking some—or a guy.

Q. Did both of you get spankings with the cable?

A. Yes, I—I got spanked once, my sister twice.

[Emphasis added.]

The State points out that Arellano-Sanchez failed to preserve his rule 403 and 404(b) objections in the trial court and that in light of the record, evidence of three spankings with a cable would have had little impact on Arellano-Sanchez's case.[2] We agree. *See* Tex. R. App. P. 33.1(a)(1), 44.2(b); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Clay v. State*, 361 S.W.3d 762, 765 (Tex. App.—Fort Worth 2012, no pet.).

Generally, the erroneous admission of evidence is nonconstitutional error governed by rule 44.2(b) if the trial court's ruling merely offends the rules of evidence. *See Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66

---

[2]Further, Y.A. testified, without objection, that Arellano-Sanchez would hit her "real hard sometimes [and] that [she] would get bruises and marks on [her]." *See Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010) (noting that improper admission of evidence is harmless when other such evidence is admitted without objection), *cert. denied*, 131 S. Ct. 905 (2011). And the State contends that the evidence was relevant and admissible under code of criminal procedure article 38.37 to explain why Arellano-Sanchez's daughters feared him and tolerated his abuse for so long before making an outcry. *See* Tex. Code Crim. Proc. Ann. art. 38.37, §§ 1–2 (West 2005 & Supp. 2012).

S. Ct. 1239, 1253 (1946)).  Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect."  *Solomon*, 49 S.W.3d at 365; *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).  In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case.  *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

At the time of the trial, twenty-two-year-old L.A., who was studying to be a medical doctor, testified that her father began touching her sexually when she was ten years old and that the sexual abuse—which escalated from Arellano-Sanchez groping her breasts to his having oral, anal, and vaginal intercourse with her—did not stop until she was twenty-one.  Y.A., who was twenty years old at the time of the trial, stated that Arellano-Sanchez began touching her sexually when she was twelve years old and that he had oral, anal, and vaginal intercourse with her, which eventually resulted in the birth of their son when she was eighteen years old; the sexual abuse continued after their child's birth.[3]

---

[3]A paternity test reflected that the probability of Arellano-Sanchez being Y.A.'s child's father was 99.99993%, and Arellano-Sanchez admitted that he was the child's father during his trial testimony but claimed that the child was his through artificial insemination.

5

L.A. and Y.A. both testified that when they were growing up, Arellano-Sanchez would punish them for disobeying his rules. For violating his rule that they could not talk to boys, he made them wear boys' clothes to school and told them that they could never marry "because [they] would always be his." He also made them sleep on the floor of the master bedroom so that he could keep watch over them. L.A. testified that she was afraid of her father, so she followed his rules to avoid punishment; Arellano-Sanchez told her that he got Y.A. pregnant because Y.A. broke the rules more and "the only way he could make her settle down and just be responsible and focus on school was by getting her pregnant so that she would have a responsibility."

Y.A. testified that Arellano-Sanchez controlled the way she dressed and would not allow her to shave her legs, pluck her eyebrows, wear makeup, or paint her nails. When she broke the no-leg-shaving rule in seventh grade, he shaved her head. When she was seventeen, she plucked her eyebrows and got her ear pierced, and he shaved off her eyebrows in retribution. When Y.A. started seeing a boy, Arellano-Sanchez tied her up in the garage for half a day.[4] Y.A. stated that she was afraid of her father because he would hit her if she disobeyed his rules. When Arellano-Sanchez carved his name on Y.A.'s right

---

[4]Arellano-Sanchez admitted to tying up Y.A. in the garage but said that he did not remember what rule she had broken. He admitted to shaving Y.A.'s head but said that it was because Y.A. had a scalp condition. And he admitted to making L.A. and Y.A. wear boys' clothing to school as a punishment. He otherwise testified that L.A. and Y.A. were liars.

6

breast using a needle, she did not object "because [she] knew that he was going to get all mad," and she described his attitude as "You're mine. I can do whatever I want, basically."

L.A. testified that Arellano-Sanchez had her demonstrate to Y.A. how to perform oral sex on him. When L.A. was seventeen and Y.A. was sixteen, he had sexual intercourse with both of them at the same time. L.A. said that they could not refuse because he would get angry and punish them. L.A. testified that she did not tell her mother because she was scared and because Arellano-Sanchez told her that "if [she] ever told that [their] whole family would fall apart, and he would just leave [their] mom and [their] brothers behind, but he would take—he would take [her and Y.A.]." Arellano-Sanchez told L.A. that if she told anyone, "there goes [her] education, there goes the family, no structure anymore, [they] would have to leave with him." L.A. said that she suffered "many years of fear." Y.A. remained silent because her father told her that if she told the truth about their son, he would go to jail and the family would be ruined.

In light of the evidence above regarding Arellano-Sanchez's decade-long atrocities that he committed against his two daughters,[5] even if L.A.'s testimony that he had spanked her and Y.A. with a cable cord did not fall under article 38.37, the error in admitting this testimony, if any, would have been harmless.

---

[5]The record contains additional evidence, but we believe that the recitation above is more than sufficient to show that Arellano-Sanchez's substantial rights were not affected by the admission of L.A.'s testimony about three spankings.

7

Assuming, without deciding, that the spanking evidence was not relevant, based on the record before us, we conclude that its admission did not affect Arellano-Sanchez's substantial rights. *See* Tex. R. App. P. 44.2(b); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999). Therefore, we overrule Arellano-Sanchez's sole point and affirm the trial court's judgments.

BOB MCCOY
JUSTICE

PANEL: GARDNER, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 2, 2013