

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-16-00421-CR

BRIAN BRADFORD                                    APPELLANT

V.

THE STATE OF TEXAS                                 STATE

----------

### FROM THE 431ST DISTRICT COURT OF DENTON COUNTY
### TRIAL COURT NO. F-2014-1621-F

----------

## MEMORANDUM OPINION[1]

----------

After placing appellant Brian Bradford on community supervision, the trial court revoked the community supervision and adjudicated his guilt for continuous violence against a member of his family, a third-degree felony.[2]  In two related issues on appeal, Bradford argues that the trial court abused its discretion by

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 25.11(a), (e) (West 2011).

revoking the community supervision based on a finding that he committed a new offense. We conclude that the evidence is sufficient to support revocation, and we therefore affirm the trial court's judgment.

## Background

A grand jury indicted Bradford with continuous violence against a member of his family. The indictment alleged that during a period of less than twelve months, he had assaulted his wife G.B. (Gina)[3] on three occasions.

Bradford pleaded guilty. The trial court deferred adjudication of his guilt and placed him on community supervision. Among other conditions of the community supervision, the trial court ordered him to commit no further offenses.

Less than a year after Bradford began his community supervision, the State filed a motion asking the trial court to adjudicate his guilt. The State alleged that he had committed new offenses by twice assaulting Gina. Bradford pleaded not true to these allegations. The trial court held a hearing on the State's motion, received the parties' evidence and arguments, and found the State's allegations true. After hearing further testimony, the court revoked Bradford's community supervision, adjudicated his guilt, and sentenced him to eight years' confinement. He brought this appeal.

---

[3]To protect G.B.'s anonymity, we use an alias. *See McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

**The Trial Court's Revocation Decision**

On appeal, Bradford contends that the trial court abused its discretion by revoking his community supervision based on the court's finding that he violated a condition by committing two assaults. We review a trial court's decision to revoke community supervision for an abuse of discretion. *Leonard v. State*, 385 S.W.3d 570, 576 (Tex. Crim. App. 2012) (op. on reh'g). In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated at least one term of community supervision. *See id.*; *Powe v. State*, 436 S.W.3d 91, 93 (Tex. App.—Fort Worth 2014, pet. ref'd) ("Proof of a violation of a single condition is sufficient to support a trial court's decision to revoke probation."). The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial court's revocation ruling. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981); *Clay v. State*, 361 S.W.3d 762, 765 (Tex. App.—Fort Worth 2012, no pet.). The trial court is free to accept or reject all or part of the testimony of any witness. *Miles v. State*, 343 S.W.3d 908, 913–14 (Tex. App.—Fort Worth 2011, no pet.) ("Although there are inconsistencies in the testimony by Rojo, Fernandez, and Rodriguez, the inconsistencies raise credibility issues for the trial court as factfinder, and the trial court was free to accept or reject any or all of the witnesses' testimony.").

The State's motion for the trial court to adjudicate Bradford's guilt alleged that he had violated a condition of his community supervision by committing an

3

assault against Gina in January 2016 and again in February 2016. *See* Tex. Penal Code Ann. § 22.01(a)(1) (West Supp. 2017) (providing the elements of assault causing bodily injury); *see also id.* § 1.07(a)(8) (West Supp. 2017) (defining "bodily injury"); *Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009) ("Direct evidence that a victim suffered pain is sufficient to show bodily injury."). Specifically, the motion alleged that in January 2016, Bradford had caused bodily injury to Gina by putting his hands around her neck, and that in February 2016, he had caused bodily injury to her by slamming a door on her fingers and on her wrist. We will summarize the evidence concerning these allegations below.

**Gina's testimony**

Gina, Bradford's wife at the time of the alleged assaults and his ex-wife at the time of the revocation hearing, testified that one night in January 2016, they began to argue with each other. Bradford became angry, and he "grabbed [Gina] by [her] neck and choked [her]." After Bradford "choked [her] pretty hard," he "dropped [her] and left the room." Although Gina did not pass out, her breathing was restricted for a short time. Gina took photographs of her neck and sent them to her sister through text messages.[4] According to Gina, Bradford's assault produced bruises on her neck and a bruise on her shoulder. The photographs

---

[4]The trial court admitted copies of these photographs. Gina's sister testified and confirmed that Gina had sent the photographs to her.

show red marks on her neck. She did not call the police because she was scared of how Bradford would respond.

On another occasion, in February 2016,[5] Bradford became angry at Gina because she was sending text messages from her phone. Bradford took the phone from Gina, and when she followed him while attempting to retrieve the phone, he "slammed [her] hand in [a] door multiple times." According to Gina, the assault fractured her hand. As results of the assault, she required surgery and, at the time of the revocation hearing, one of her fingers would not bend.

On cross-examination, Gina conceded that she has taken medicine to treat mental health issues and that she drinks alcohol, including doing so on the day of the February 2016 incident. She also testified that concerning that incident, she had previously told a detective that she thought that Bradford's slamming her hand in the door was an accident. She testified that she had originally so claimed because she was attempting to "cover" for him and because she feared him.[6]

---

[5]During her testimony, Gina was initially mistaken about which incident occurred in which month.

[6]A deputy who met with Gina after this incident testified that victims of domestic violence commonly hide the truth about assaults. He admitted that on the night of the incident, Gina told him that her hand had been accidentally caught in a door when Bradford had attempted to close it. Based on Gina and Bradford's agreement that night that the injury to Gina's hand was accidental, the deputy concluded at that time that no assault had occurred.

**Michelle Haiduk's testimony**

Michelle Haiduk, an investigator with the Denton County Sheriff's Office, testified that following the February 2016 incident, she began investigating that incident along with the incident that had occurred the prior month. Haiduk spoke with Gina and members of Gina's family but did not speak with Bradford because Gina had led Haiduk to believe that Haiduk's contacting Bradford "would possibly cause [Gina] further harm." Haiduk testified that she had wanted to speak to Bradford but that "safety is the number one concern . . . in cases of domestic violence" and that "[Gina had] led [her] to believe that [Gina's] safety would be in danger." Based on Haiduk's referral to a grand jury, the grand jury indicted Bradford for both of the incidents.

Haiduk conceded that an x-ray of Gina's hand did not reveal an "acute fracture" and showed only that her pinky may have had a "chronic fracture."[7] Thus, Haiduk recognized that Gina's statement that she had sustained a fracture to her hand in the February 2016 incident was not true. Haiduk also admitted that while the photographs from the January 2016 incident showed redness on Gina's neck, she had no personal knowledge about what caused the redness.

---

[7]The same medical record that reveals these facts also describes Gina's "[d]iagnosis" as "AS[S]AULTED" and describes her "[d]ifferential [d]iagnosis" as "[h]and contusion, hand fracture, wrist fracture."

6

**Bradford's testimony**

In his testimony, Bradford denied assaulting Gina in January 2016 or in February 2016. He testified that Gina had consumed several alcoholic drinks on the night of the January 2016 incident, that she had attempted to start an argument with him that night, and that he had avoided the argument while locking himself in a room away from her and falling asleep. Bradford testified that on that night, Gina had taken hinges off a door in an attempt to get to him. He denied that he had any negative contact with Gina that evening.

Concerning the February 2016 incident, Bradford testified that Gina had again drunk alcohol and that she had again attempted to start an argument with him. According to Bradford, in an attempt to avoid confrontation, he tried to shut himself in a bathroom closet. Without knowing that Gina was present, when he attempted to shut the closet's door, he accidentally shut her hand in the door. He then left the house to avoid any further confrontation.

**Analysis**

Bradford argues that we should "set aside the finding of true that [he] committed a new offense of assault . . . as the State did not prove by a preponderance of evidence that [he] intentionally, knowingly, or recklessly caused bodily injury to [Gina]." In presenting this argument, Bradford frames the evidence from his perspective. Specifically, relying on his testimony, he argues that the February 2016 incident was an accident because he did not know that Gina was present when he shut the closet's door. Concerning the January 2016

7

incident, he contends that no reasonable factfinder could have believed Gina's testimony because her "character for truthfulness was questionable" and because the photographs that the trial court admitted did not adequately corroborate Gina's testimony.

We acknowledge that the record contains facts and inferences drawn from Gina's, Haiduk's, and Bradford's testimony that a hypothetical factfinder could have weighed against a finding in favor of the allegations in the State's motion to adjudicate. But the trial court's finding of true to the allegations implies that it rejected those facts and inferences and accepted facts and inferences supporting the finding. We must defer to the trial court's implied resolution of conflicting evidence in favor of its findings of true. *See Colbert v. State*, Nos. 02-13-00382-CR, 02-13-00383-CR, 2014 WL 1257390, at *1 (Tex. App.—Fort Worth Mar. 27, 2014, no pet.) (mem. op., not designated for publication).

Gina's testimony, which the trial court had the authority to accept and rely on—*see Miles*, 343 S.W.3d at 913–14—shows that during the January 2016 incident, Bradford, after verbally arguing with Gina, grabbed her neck with both of his hands and choked her "pretty hard." The choking impeded Gina's breathing and left red marks on her neck, of which she took photographs. Gina's testimony also shows that during the February 2016 incident, after Bradford took her phone and after she attempted to retrieve it, he slammed her hand in a door "multiple times," requiring surgery and resulting in the impaired function of a finger.

Viewing these facts and the remaining evidence in the light most favorable to the trial court's decision, we cannot say that the trial court abused its discretion by finding the State's allegations true, by revoking Bradford's community supervision, and by adjudicating his guilt.  *See Leonard*, 385 S.W.3d at 576; *Garrett*, 619 S.W.2d at 174.  We overrule both of Bradford's issues.

## Conclusion

Having overruled Bradford's two issues, we affirm the trial court's judgment.

/s/ Wade Birdwell
WADE BIRDWELL
JUSTICE

PANEL:  GABRIEL, PITTMAN, and BIRDWELL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  December 28, 2017