

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-11-00311-CR

———————————————

FRED EARL INGERSON, III, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 355th District Court
Hood County, Texas
Trial Court No. CR11514

---

Before Meier, Gabriel, and Birdwell, JJ.
Memorandum Opinion on Remand by Justice Meier

## MEMORANDUM OPINION ON REMAND

## I. INTRODUCTION

This appeal is before this court on remand from the Texas Court of Criminal Appeals. *See Ingerson v. State*, 508 S.W.3d 703 (Tex. App.—Fort Worth 2016) ("*Ingerson I*"), *rev'd*, *Ingerson v. State*, 559 S.W.3d 501 (Tex. Crim. App. 2018) ("*Ingerson II*"). In his initial briefing to this court, Ingerson raised four issues: (1) the evidence was legally insufficient to support the jury's capital murder verdict that he caused the deaths of Robyn Richter and Shawna Ferris, (2) the trial court erred by overruling his objection to what he deems extraneous-offense evidence, (3) the trial court erred by ruling that the complained-of evidence's prejudicial value did not outweigh its probative value, and (4) the trial court erred by not allowing him to present alternative-perpetrator evidence. This court initially sustained Ingerson's first issue and thus did not address his remaining issues. *See Ingerson I*, 508 S.W.3d at 736. The court of criminal appeals reversed this court's decision, holding that the evidence was sufficient to support the jury's verdicts. *See Ingerson II*, 559 S.W.3d at 509. The court of criminal appeals then remanded this case back to this court for us to address Ingerson's remaining three issues. *Id.* at 511. Because we conclude that Ingerson failed to preserve his second and third issues and because we conclude that the trial court did not abuse its discretion by omitting the alternative-perpetrator evidence, we will affirm.

## II. DISCUSSION

The facts of this case are fully set out in both *Ingerson I* and *Ingerson II*, and a replication of those facts is not necessary. Thus, this court will directly address Ingerson's remaining three issues.

### A.    The Trial Court's Admission of a Check Written by Ingerson

In his second and third issues, Ingerson argues that the trial court erred by admitting in evidence a check that Ingerson made out when purchasing a gun of the same make and model as the murder weapon. The check's memo field is filled in with the notation "FOR <u>DOOR</u>." The State, however, introduced the check and elicited testimony that the check was in fact for a gun. Ingerson argues that this was extraneous-offense evidence and that its prejudicial value outweighed its probative value. The State argues that Ingerson has failed to preserve these issues for our review. We agree with the State.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016). Generally, if a trial court hears objections to proffered evidence outside the jury's presence and rules the evidence admissible, the objections are deemed to apply when the evidence is admitted before the jury without the necessity of repeating the objections. Tex. R. Evid. 103(b); *Haley v. State*, 173 S.W.3d 510, 517 (Tex. Crim. App. 2005). But when a defendant

affirmatively asserts that he has "no objection" when the evidence is presented for the jury, the defendant typically forfeits any error for appellate review. *James v. State*, 772 S.W.2d 84, 97 (Tex. Crim. App.), *vacated on other grounds*, 493 U.S. 885 (1989). Moreover, if a witness testifies to the contents of a properly objected-to document without objection, then the defendant fails to preserve the issue of the document's admission for appellate review. *See Clay v. State*, 361 S.W.3d 762, 767 (Tex. App.— Fort Worth 2012, no pet.) ("[B]ecause Wallace provided testimony about the Louisiana records without objection before and after appellant's objection to the admission of the records and because appellant failed to obtain a running objection, we conclude that he forfeited his objection to the records' admission." (footnote omitted)).

Here, outside the presence of the jury, Ingerson objected to the admission of the check. But later, in the presence of the jury when the State introduced a photocopy of the check, Ingerson stated that he had "[n]o objection." Furthermore, the State elicited testimony from the person to whom Ingerson had written the check, and he testified, among other contents, that the memo field on the check stated it was for a "door." Ingerson did not object to this testimony. Because Ingerson affirmatively stated he had no objection when the State introduced the check and because he did not object when the State later introduced testimony regarding the contents of the check, Ingerson has failed to preserve his second and third issues for our review, and we overrule them.

### B. Alternative-Perpetrator Evidence

In his fourth issue, Ingerson complains that the trial court erred by not allowing him to present evidence of an alternative perpetrator. At trial, Ingerson sought to introduce evidence that Mohamed Sylla had a motive to murder Richter. Specifically, Ingerson sought to introduce evidence that Sylla and Richter were involved in a scheme to defraud the county tax authority by having Sylla's friends pay cash to Richter (who worked at the motor vehicle registration section of the tax office prior to her murder) for motor vehicle registrations, then Richter allegedly void these transactions through gift-transfer affidavits, and then take the cash. According to Ingerson, Sylla had motive to kill Richter because she was being investigated for these transactions and he feared being implicated in the scheme. The State counters that Ingerson failed to demonstrate a nexus between Sylla and any of the alleged suspicious transactions and that thus the trial court did not abuse its discretion by not admitting the evidence.

A defendant can attempt to prove his innocence by showing that someone else committed the crime. *Wiley v. State*, 74 S.W.3d 399, 406 (Tex. Crim. App.), *cert. denied*, 537 U.S. 949 (2002). But to present evidence of an alternative perpetrator, the defendant must show that the evidence is sufficient to establish a nexus between the crime charged and the alleged alternative perpetrator, either on its own or in combination with the other evidence in the record. *Id.* The admission of alternative-perpetrator evidence is also subject to a rule 403 balancing test, according to which

5

the trial court must weigh its probative value against its tendency to confuse the issues or mislead the jury, among other potential harms. Tex. R. Evid. 403; *Wiley*, 74 S.W.3d at 405–06. Because alternative-perpetrator evidence presents "a great threat of 'confusion of the issues,'" it must be viewed with caution. *Wiley*, 74 S.W.3d at 407. We review a trial court's exclusion of alternative-perpetrator evidence for an abuse of discretion. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005); *Caldwell v. State*, 356 S.W.3d 42, 48 (Tex. App.—Texarkana 2011, no pet.). A trial court does not abuse its discretion by excluding alternative-perpetrator evidence if its ruling was within the "zone of reasonable disagreement." *Martin v. State*, 173 S.W.3d at 467.

In this case, while Ingerson produced some evidence through witness testimony at trial suggesting that Richter had falsified affidavits and pocketed cash, Ingerson did not present any evidence that Sylla had any relationship to these suspicious transactions. Indeed, all of the witnesses questioned during Ingerson's offer of proof testified that they had no knowledge that Sylla benefited from or was involved in any of these alleged suspicious transactions. In fact, multiple witnesses testified that after Richter's murder, any investigation into the suspicious transactions ceased. Moreover, Ingerson did not present any of the allegedly suspicious affidavits. And other than eliciting testimony that Sylla knew Richter, would often seek her out at the tax office when he would register motor vehicles, and would refer his friends to her, Ingerson presented no evidence that Sylla may have been involved in a tax-fraud scheme with Richter nor that he had the motive to murder her because she was being

6

investigated. Most importantly, Ingerson presented no evidence demonstrating a nexus between Sylla being involved in the alleged tax scheme and Richter's murder. *See Wiley*, 74 S.W.3d at 406 (holding that to be entitled to present alternative-perpetrator evidence, defendant must demonstrate a nexus between his proffered evidence and the charged offense).

But even if we assumed that Ingerson's proffered evidence had some marginal relevance, the proffered evidence cannot survive the balancing test under rule 403. Tex. R. Evid. 403. The probative value of this evidence was slight because of its highly speculative nature. The evidence did, however, present a great threat of confusion of the issues because it would have forced the State to attempt to disprove the nebulous allegation that perhaps Sylla was somehow involved in some alleged tax scheme. This side trial might have led the jury astray, turning the focus away from whether Ingerson—the only person whose actions were on trial—murdered Richter and Ferris. Ingerson's proffered evidence is precisely the type of emotionally-freighted but speculative evidence that trial judges properly exclude under rule 403, whether offered by the State or the defendant. *See Wiley*, 74 S.W.3d at 407 ("It is not sufficient for a defendant merely to offer up unsupported speculation that another person may have done the crime.") (*quoting United States v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir. 1998), *cert. denied*, 526 U.S. 1007 (1999)).

Because Ingerson did not show a nexus between his proffered evidence of an alternative perpetrator and the crime charged and because the proffered evidence's

prejudicial value substantially outweighed its probative value, we hold that the trial court did not abuse its discretion by excluding Ingerson's proffered alternative-perpetrator evidence. Tex. R. Evid. 403; *Wiley*, 74 S.W.3d at 405–06. We overrule Ingerson's fourth issue.

## III. CONCLUSION

The court of criminal appeals having rejected this court's ruling on Ingerson's first issue that the evidence was insufficient to support the jury's capital murder verdict that he caused the deaths of Robyn Richter and Shawna Ferris and having remanded the case to this court, and this court having overruled on remand Ingerson's three remaining issues, we affirm the trial court's judgment.

/s/ Bill Meier
Bill Meier
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: December 31, 2018

8