

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-18-00131-CR

———————————————————

MANUEL RAMIREZ, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1520847R

Before Gabriel, Pittman, and Bassel, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. Introduction

Appellant Manuel Valdez Ramirez appeals his conviction for one count of continuous sexual abuse of a child,[1] two counts of indecency by contact,[2] and one count of indecency by exposure.[3] A jury assessed punishment at 34 years' confinement for the offense of continuous sexual abuse, 20 years' confinement for each count of the offense of indecency by contact, and 10 years' confinement for the offense of indecency by exposure, and the trial court sentenced Ramirez accordingly with the sentences to run concurrently. On appeal, Ramirez asserts that (1) the evidence is insufficient to support his conviction for continuous sexual abuse; (2) the trial court caused him egregious harm when it instructed the jurors that they could consider acts of sexual abuse committed on any date and that this error in the charge permitted the jury to convict him for acts occurring prior to the effective date of the continuous-sexual-abuse statute; (3) the State's "repeated use of hearsay and speculation" in questioning the State's witnesses denied Ramirez a fair trial; and (4) the complainant's boyfriend's testimony as to what the complainant "was thinking and feeling and what she wanted the jury to do at punishment" denied Ramirez a fair trial at the punishment hearing. We affirm.

---

[1]*See* Tex. Penal Code Ann. § 21.02(b), (c)(4) (West Supp. 2018).

[2]*See id.* § 21.11(a)(1) (West Supp. 2018).

[3]*See id.* § 21.11(a)(2).

2

## II. Background

In 2017, Ramirez was indicted for one count of continuous sexual abuse of E.V., his girlfriend's[4] granddaughter. The indictment alleged that between September 1, 2007 and November 21, 2010, Ramirez committed two or more acts of sexual abuse (aggravated sexual assault) during a period of more than 30 days by penetrating E.V.'s sexual organ with his finger. The indictment also charged Ramirez with two counts of indecency by sexual contact on or about November 21, 2010, by touching E.V.'s (1) genitals and (2) breast. Finally, the indictment charged Ramirez with committing one count of indecency by exposure on or about November 21, 2010, by exposing his genitals to E.V.

At trial, the State called eight witnesses, including E.V.[5] E.V. began by stating that she was born in November 1996 and that she was 21 years old at the time of trial. She testified that Ramirez began inappropriately touching her when she was six or seven years old. He had rubbed her leg and put his finger inside of her vagina when she visited her grandparents at the InTown Suites in North Richland Hills. E.V. testified that when she was "[l]ike 11 [years old]" and her grandparents were living at a new residence, Wildwood Branch Apartments, Ramirez started touching her breasts,

---

[4]E.V.'s grandmother testified that she and Ramirez have a "[h]usband-and-wife relationship." They were married in 1972, divorced in 1977, and reunited around 1989. While they were apart, E.V.'s grandmother remarried and had a daughter, who eventually gave birth to E.V. We refer to Ramirez and E.V.'s grandmother collectively as E.V.'s grandparents.

[5]We discuss the trial testimony in more detail below, as relevant to each point.

put his fingers inside of her vagina "three or four times," exposed his penis to her and had her touch it. E.V. then testified that when she was "[l]ike 12, 13," she visited her grandparents at a new residence at Spring Lake Apartments, and Ramirez would do "[t]he same thing." The Defense called three witnesses, including Ramirez, who denied committing the acts alleged.

The jury returned a guilty verdict on Counts One, Four, Five, and Six.

## III. Discussion

### A. Point 1

In his first point, Ramirez argues that the evidence is insufficient to prove beyond a reasonable doubt that he committed the offense of continuous sexual abuse of a child. The State responds that the evidence, viewed in the light most favorable to the verdict, is sufficient to establish all of the elements of the offense.

#### 1. Standard of Review

Federal due process requires that the State prove beyond a reasonable doubt every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979); *see* U.S. Const. amend. XIV. In our due-process evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622.

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Queeman*, 520 S.W.3d at 622. Thus, when performing an evidentiary-sufficiency review, we may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*, 136 S. Ct. 198 (2015); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Murray*, 457 S.W.3d at 448–49.

To determine whether the State has met its *Jackson* burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by the hypothetically correct jury charge to the evidence adduced at trial. *See Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Crabtree v. State*, 389 S.W.3d 820, 824 (Tex. Crim. App. 2012) ("The essential elements of the crime are

5

determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Jenkins*, 493 S.W.3d at 599. The "law as authorized by the indictment" means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument. *See id.*; *see also Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

### 2. Applicable Law and the Hypothetically Correct Jury Charge

Section 21.02 of the penal code provides that

(b) A person commits an offense if:

> (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

> (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age . . . .

. . . .

(c) For the purposes of this section, "act of sexual abuse" means any act that is a violation of one or more of the following penal laws:

. . . .

(4) aggravated sexual assault under Section 22.021[.]

Tex. Penal Code Ann. § 21.02(b)–(c).

In its indictment of Ramirez, the State alleged that "on or about" September 1, 2007, "through" November 21, 2010, he committed two or more acts of sexual abuse during a period of time longer than 30 days by committing aggravated sexual assault of E.V. by inserting his finger into her sexual organ. Thus, the hypothetically correct jury charge to convict Ramirez of the offense of continuous sexual abuse of a young child required that the State prove (1) Ramirez (2) committed two or more acts of aggravated sexual assault by inserting his finger into E.V.'s sexual organ (3) over a period of 30 or more days (4) between September 1, 2007,[6] and November 21, 2010. *See Lewis v. State*, No. 02-16-00179-CR, 2017 WL 2686325, at *6 (Tex. App.—Fort Worth June 22, 2017, pet. ref'd) (mem. op., not designated for publication) ("In order to be convicted of continuous sexual abuse of a child, the defendant must be found to have committed two or more acts of sexual abuse against a child or children under the age of 14 'during a period that is 30 or more days in duration.'") (quoting Tex. Penal Code Ann. § 21.02(b)).

---

[6]Although discussed more fully below, section 21.02 first became effective on September 1, 2007. *See* Act of May 18, 2007, 80th Leg., R.S., ch. 593, §§ 1.17, 4.01(a), 2007 Tex. Gen. Laws 1120, 1127, 1148. Therefore, the statute cannot apply to acts committed by Ramirez prior to September 1, 2007. *See Kuhn v. State*, 393 S.W.3d 519, 524 (Tex. App.—Austin 2013, pet. ref'd) ("The offense of continuous sexual abuse of a young child became effective on September 1, 2007, and the statute does not apply to acts of sexual abuse committed before that date.").

### 3. Application of the Law to the Facts

At trial, E.V. testified that she was born in November 1996. She testified that Ramirez on multiple occasions put his fingers inside of her vagina when she visited her grandparents at Wildwood Branch Apartments. When asked how old she was at this time, E.V. stated she was "[l]ike 11." E.V. further testified that Ramirez would do "[t]he same thing" when she visited her grandparents at their next home at Spring Lake Apartments. When asked how old she was at this time, E.V. stated she was "[l]ike 12, 13." State's Exhibit 11 likewise reflected that E.V. visited Wildwood Branch Apartments when she was between 9 and 12 years old and that she visited Spring Lake Apartments when she was between 12 and 13 years old.

Ramirez contends that E.V.'s testimony is not sufficient to support a conviction because she was not asked and did not state "specifically that any finger penetration occurred after September 1, 2007," and she was not asked whether "two or more occurrences of that particular act took place after September 1, 2007, separated by 30 days." Although E.V. did not detail each act of abuse and the specific date it occurred, E.V.'s testimony that she was born in November 1996 coupled with her testimony concerning her age and when the abuse occurred and State's Exhibit 11 allowed jurors to reasonably conclude that Ramirez committed two or more acts of sexual assault by inserting his finger into E.V.'s vagina in November 2007 (when E.V. was 11 and the grandparents lived at Wildwood Branch Apartments) and a separate time in 2009 (when E.V. was 13 and the grandparents lived at Spring Lake

Apartments). Regarding these dates, in his appellate brief, Ramirez concedes that acts occurring when E.V. was older than 10 years and 9 months old occurred after the continuous-sexual-abuse statute became effective. Thus, acts occurring *after* E.V. was 10 years and 9 months old could be used to support a conviction.

There is sufficient evidence that at least two acts of digital penetration occurred over a period of more than 30 days between September 1, 2007, and November 21, 2010. *See Lewis*, 2017 WL 2686325, at *7–8 (holding "jury could have rationally concluded" a date range of two or more abusive acts "[a]lthough [the victim's] testimony may have been imprecise as to dates," in part because she testified to her age when the first incident of sexual abuse occurred); *Machado v. State*, No. 02-15-00365-CR, 2016 WL 3962731, at *3 (Tex. App.—Fort Worth July 21, 2016, pet. ref'd) (mem. op., not designated for publication) (acknowledging that most of the remaining evidence was weak concerning when the abuse occurred but holding that the record "contains evidentiary puzzle pieces that the jury could have carefully fit together" to determine abuse had occurred over period of 30 or more days).

Ramirez further contends that E.V.'s testimony that the "same thing" happened at the Wildwood Branch Apartments is too vague to support that two acts of sexual abuse (penetration of the complainant's vagina with his fingers) occurred between September 1, 2007 and November 21, 2010, and more than 30 days apart. We disagree. Here, the State and the complainant clarified the term "same thing" in a way that obviates Ramirez's contention.

9

On direct examination, the prosecutor asked E.V. to describe the first time Ramirez had touched her while he was living at the InTown Suites, when E.V. was six or seven years old:

Q. And the very first time that he did that, do you remember about how old you were?

A. 6 to 7 years old.

Q. Was it one of the times that you were leaving where they lived here at InTown Suites and you were in the car with him, or do you remember?

A. I don't remember.

. . . .

Q. And when he -- I've got to ask you some specific questions about that. Okay?

A. (Witness nods.)

Q. When he put his hands down your pants, did he go over your underwear or under your underwear?

A. Under.

Q. And you said that he would put his fingers -- and he would do what with his fingers?

A. Put them in me.

Q. And when you say "in" you -- I'm sorry that I have to ask this, but I have to ask this. Okay?

When he would put his fingers in you, would he actually put his fingers inside of your vagina?

A. Yes.

10

The prosecutor then asked if the "same thing" happened other times:

Q. After the very first time that happened, were there other times that he would do the same thing when y'all were in the car?

A. Yes.

Q. Were there times that he would do the same thing when you were staying at the InTown Suites with [grandmother] and the Defendant?

A. Yes.

E.V. was asked to clarify whether "those things" meant anything other than what she had already testified to:

Q. And when he would -- and I'm saying "those things." Did he do other things to you besides what you've just told the jury?

A. No.

Then, when she was asked what happened after Ramirez moved to Wildwood Branch Apartments, E.V. stated, "The same things." The prosecutor again clarified what E.V. meant when she used that term:

Q. Okay. So when you were staying there, were there times that he would -- you said he did the same thing. Would he touch your vagina with his hand under and over your underwear?

A. Yes.

Q. And would he actually put his fingers inside of your vagina there at Wildwood Branch Apartments?

A. Yes.

11

The prosecutor then asked E.V. how old she was when she visited Ramirez at the Spring Lake Apartments and what he did during those visits:

Q. Okay. About what age do you think you were when you were visiting him at Spring Lake Apartments?

A. Like 12, 13.

Q. What would he do during that time?

A. The same. The same thing.

Thus, the term "same thing" did not, as Ramirez contends, possibly refer to multiple acts. Instead, "the same thing" referred to Ramirez putting his fingers in E.V.'s vagina. Viewing the evidence in the light most favorable to the verdict as we must, this testimony is sufficient evidence of two predicate acts—first, at Wildwood Branch Apartments, and second, at Spring Lake Apartments—as alleged in the indictment, occurring more than 30 days apart, between September 1, 2007, and November 21, 2010. *See Raybon v. State*, No. 02-12-00071-CR, 2013 WL 4129126, at *5 (Tex. App.—Fort Worth Aug. 15, 2013, pet. dism'd) (per curiam) (mem. op., not designated for publication) (recognizing that when the evidence permits two reasonable inferences, we defer to the jury's choice).

Accordingly, we overrule Ramirez's first point.

## B. Point 2

In his second point, Ramirez contends that he was egregiously harmed because the jury charge erroneously instructed the jurors that they were not bound by the

dates listed in the indictment and could convict him for the offense of continuous sexual assault of a child based on any acts committed prior to the presentment of the indictment.[7] This instruction was erroneous because section 21.02 of the penal code, which criminalizes continuous sexual abuse of a young child, did not become effective until September 1, 2007, and it does not apply to any acts occurring before that date. In its brief, "the State concedes that the jury charge in this case was erroneous" but argues that the conviction should nevertheless be affirmed because Ramirez failed to meet the egregious harm standard of review for an unobjected-to charge error. Because the parties agree that the jury charge was erroneous and because we likewise agree that the jury charge was erroneous for failing to instruct the jurors that they were not permitted to convict Ramirez for acts committed before September 1, 2007, we focus our analysis on whether the erroneous jury charge caused Ramirez egregious harm and conclude that it did not.[8]

## 1. Standard of Review

We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In reviewing a jury charge, we first determine whether error occurred; if not, our analysis

---

[7]Ramirez acknowledges that he did not object to the instruction.

[8]*See Martin v. State*, 335 S.W.3d 867, 873 (Tex. App.—Austin 2011, pet. ref'd) (holding the trial court had a duty to instruct the jurors on its own motion that they were not permitted to convict defendant under section 21.02 for acts committed before September 1, 2007).

13

ends.  *Id.*  But unpreserved charge error warrants reversal only when the error resulted in egregious harm.  *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006).

The appropriate inquiry for egregious harm is fact- and case-specific.  *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).  In making an egregious harm determination, we must consider "the actual degree of harm . . . in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole."  *Almanza*, 686 S.W.2d at 171; *see generally Gelinas*, 398 S.W.3d at 708–10 (applying *Almanza*).  Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive."  *Taylor*, 332 S.W.3d at 490 (citing *Almanza*, 686 S.W.2d at 172).  The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

## 2. Applicable Law

"It is a longstanding rule that the State is not required to prove that an offense was committed on the date alleged in the indictment (whether or not the words 'on or about' are used) but may prove that the offense was committed on any date prior to

the return of the indictment and within the period of limitations." *Martin*, 335 S.W.3d at 873. As noted above, however, section 21.02 first became effective on September 1, 2007, so acts committed prior to that date cannot support the conviction. *See Kuhn*, 393 S.W.3d at 524; *Martin*, 335 S.W.3d at 873. Indeed, both the United States and Texas constitutions prohibit ex post facto laws because "there can be few rights more valuable or more basic to our system of justice than that a person cannot be punished as a criminal for conduct that was innocent when done." *Martin*, 335 S.W.3d at 876.

### 3. Analysis of Egregious Harm Factors

#### a. Entire Jury Charge

The opening paragraph of the charge recites that Ramirez was alleged to have committed continuous sexual abuse of a young child "on or about the 1st day of September 2007 . . . through the 21st day of November, 2010." "Thus, the opening paragraph in the charge expressly reminded the jury of the relevant time period in the case." *Kuhn*, 393 S.W.3d at 529.

But the charge in the abstract portion erroneously instructed the jurors that they could convict Ramirez based on any acts, regardless of whether they comported with the date range in the indictment:

> For the offenses of continuous sexual abuse of young child or children and indecency with a child, you are further instructed that the state is not bound by the specific date on which the offense, if any, is alleged in the indictment to have been committed, but conviction may be had upon proof that the offense, if any was committed any time prior to the presentment of the indictment.

15

The application portion of the charge, however, properly limited the jury's consideration to offenses occurring during the date range set out in the indictment:

> Now, if you find from the evidence beyond a reasonable doubt that Manuel Ramirez, *on or about the 1st day of September 2007, in the County of Tarrant, State of Texas, through the 21st day of November 2010*, during a period of time that is 30 days or more in duration, did commit two or more acts of sexual abuse, namely: aggravated sexual assault of a child under 14 by causing the penetration of the sexual organ of [E.V.] by inserting his finger into her sexual organ, and at the time of the commission of each of these acts of sexual abuse, the defendant was 17 years of age or older and [E.V.] was younger than 14 years of age and not the spouse of the defendant, then you will find the defendant guilty of the offense continuous sexual abuse of young child or children, as charged in count one of the indictment.

[Emphasis added.]

In *Kuhn*, a continuous-sexual-abuse case, the Austin Court of Appeals concluded that a similar charge error did not cause egregious harm because the error had occurred in the abstract portion of the charge but the application paragraph correctly instructed the jurors that in order to convict the defendant, they had to find beyond a reasonable doubt that the two or more acts of sexual abuse occurred "on or about the 1st day of September, 2007, through on or about the 16th day of December, 2009." *Id.* at 524, 529. *Kuhn* stated that Texas courts have "repeatedly held" that where the application paragraph of the charge correctly instructs the jury on the law applicable to the case, a correct statement in the application portion makes any error in the abstract portion of the charge less likely to be egregious. *Id.*; *see Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999) ("Where the application

16

paragraph correctly instructs the jury, an error in the abstract instruction is not egregious."). Thus, the *Kuhn* court held that "[w]hile the application paragraph does not make the abstract portion of the charge any less erroneous, . . . the correct statement of the law in the application paragraph mitigates against a finding of egregious harm." 393 S.W.3d at 529–30.

We agree with *Kuhn* and conclude that the charge as a whole weighs against a finding that the charge error caused Ramirez egregious harm.

### b. State of the Evidence

As explained above in our sufficiency review, there is sufficient evidence to support Ramirez's conviction for continuous sexual abuse of a child based on acts occurring after September 1, 2007. And, while some of the evidence—i.e., acts occurring at the InTown Suites—described acts that occurred prior to September 1, 2007—the specific issue of whether the abuse had occurred prior to or after September 1, 2007, was not "heavily contested" during trial. *Kuhn*, 393 S.W.3d at 528. Instead, Ramirez categorically denied committing the offense. Thus, "[t]he fact that the timing issue did not 'vitally affect a defensive theory' also weighs against a finding of egregious harm." *Id.* (quoting *Kucha v. State*, 686 S.W.2d 154, 156 (Tex. Crim. App. 1985)).

### c. Arguments of Counsel

In closing argument, the prosecutor told the jurors that they were not restricted to the dates in the indictment. The prosecutor then instructed the jurors that they

could consider any two acts that were 30 days apart, even acts that may have occurred

at InTown Suites, i.e., acts that occurred when E.V. was 6 or 7 years old (in 2002 or

2003 based on her date of birth[9]):

> I'm going to direct your attention to Page 2 [of the jury charge] relating to the continuous [sexual abuse of a child] count. You're not required to agree on the dates and the specific acts that happened. All you have to agree is that [E.V.] was under 14, and that this defendant committed two sexual acts that were 30 days apart. So four of you can think, hey, maybe it happened at the Wildwood Branch Apartments. *Four of you can think, hey, maybe it happened at the [InTown] Suites. It doesn't matter as long as you agree that this defendant put his finger in her vagina, and then he did it again and those are 30 days apart.*

[Emphasis added.]

The argument in this case differs from the one made by the prosecutor in *Kuhn*,

who used part of the closing argument to specifically explain that the continuous-

sexual-abuse statute "didn't exist" before September 1, 2007, and to draw the jury's

attention to the correct statement of law and specific dates between which the acts of

abuse must have occurred. 393 S.W.3d at 530. Here, the prosecutor did the opposite

and essentially stated that the jurors could consider acts that occurred prior to

September 1, 2007.

Although Ramirez's defensive strategy did not focus on the timing of the acts

as occurring prior to the statute's effective date, in closing, his counsel did generally

---

[9]E.V.'s grandmother testified that she and Ramirez lived at InTown Suites around 2005 and that they lived there for "[a]bout a year." Regardless, the record supports that acts occurring while Ramirez lived at InTown Suites were prior to September 1, 2007.

argue that the dates of the allegations mattered:

> How can you defend yourself? They may say don't focus on the dates. The dates don't matter. We heard testimony over and over trying to pin down who lived where, when and who was there as if it doesn't matter, but it does matter. Because how can you prove a negative if you can't even pin it down to a location or a time?

The arguments quoted represent only isolated snippets of the State's and Ramirez's counsel's arguments, and our review of the record reveals that the parties' counsel's arguments generally did not focus on the timing of the acts. But the prosecutor did tell the jurors to consider acts that predate the effective date of the statute in deciding whether to convict Ramirez. The prosecutor's argument offers some support to Ramirez's contention that he suffered egregious harm.

### d. Other Relevant Information in the Record as a Whole

At the beginning of trial, the State read the indictment to the jurors, and as did the application paragraph of the charge, the indictment correctly recited the law applicable to the case:

> Manuel Ramirez, hereinafter called defendant, *on or about the 1st day of September 2007, in the County of Tarrant, State of Texas, through the 21st day of November, 2010*, during a period of time that is 30 days or more in duration, did commit two or more acts of sexual abuse, namely, aggravated sexual assault of a child under 14 by causing the penetration of the sexual organ of [E.V.] by inserting his finger into her sexual organ, and at the time of the commission of each of these acts of sexual abuse, the defendant was 17 years of age or older and [E.V.] was younger than 14 years of age and not the spouse of the defendant[.]

[Emphasis added.] "Thus, [even] before the parties presented their opening arguments, the jury was made aware of the relevant time period in this case." *Kuhn*,

393 S.W.3d at 531. This does not weigh in favor of egregious harm.

Throughout the course of trial, the State emphasized that the abuse had occurred over a long period of time and did not distinguish between acts of abuse occurring before and after the September 1, 2007 effective date of the continuous-sexual-abuse statute, which could weigh in favor of egregious harm. *See id.* However, because the evidence of abuse that occurred prior to September 1, 2007, could permissibly be considered by the jury as circumstantial evidence of the abuse that occurred after that date, this does not favor a showing of egregious harm. *See Martin*, 335 S.W.3d at 876.

### e. Conclusion Regarding Harm

Considering these factors in their totality, we cannot conclude that the erroneous instruction in the jury charge affected the very basis of the case and deprived Ramirez of a fair and impartial trial. *See Kuhn*, 393 S.W.3d at 531; *Martin*, 335 S.W.3d at 876. The trial was bookended with the reading of the indictment and the application paragraph of the charge. Both properly limited the jurors' consideration to a proper date range. The abstract portion of the charge and passing references during the prosecutor's argument, in our mind, less directly impacted the date range the jury might consider than the reading of the indictment and the application portion of the charge. These events initially and correctly described the crime that the State charged and then defined the process the jury had to follow to convict Ramirez of continuous sexual abuse. We overrule Ramirez's second point.

## C. Points 3 and 4

In points 3 and 4, Ramirez contends that he was denied a fair trial because the State improperly elicited hearsay and speculation from its witnesses and because the State improperly elicited testimony from E.V.'s boyfriend regarding E.V.'s thoughts and feelings and what she wanted the jury to do in assessing punishment.

In support of the first contention, Ramirez first quoted for almost six pages trial testimony as demonstrating that the State had improperly elicited hearsay testimony from Haltom City Police Officer Gipson, Fort Worth Police Officer Harris, and E.V.'s boyfriend about statements made by E.V. to them that Ramirez had abused her. Ramirez then cited to three occasions when his counsel actually objected but acknowledged that "most of the time [he] did not [object]." In support of the second contention, Ramirez quoted testimony from E.V.'s boyfriend at the punishment phase, in which he testified that E.V. viewed the verdict as a victory for all women and wanted the jurors to send a message in their punishment assessment.

### 1. Fair Trial

Initially, we note that Ramirez contends that the evidentiary errors he describes effectively denied him his right to a fair trial pursuant to the Fourteenth Amendment to the U.S. Constitution, article 2.03(b) of the code of criminal procedure, and the purpose of the code of criminal procedure generally. U.S. Const. amend. XIV; Tex. Code Crim. Proc. Ann. arts. 1.03(5), 2.03(b) (West 2005). Ramirez primarily relies upon two cases to support his position, *Randle v. State*, 826 S.W.2d 943 (Tex. Crim.

21

App. 1992), and *D.L.N. v. State*, 590 S.W.2d 820 (Tex. Civ. App.—Dallas 1979, no writ). Both cases are distinguishable.

*Randle* was an appeal from a conviction for delivery of a controlled substance in which the court held that article 2.03(b) had been violated because "the [trial] court and its officers [had] failed in their duty to preserve his presumption of innocence" by "forcing this defendant to trial in jail clothes." 826 S.W.2d at 946. Although we agree that article 2.03(b) creates a statutory duty to ensure a fair trial, Ramirez was not forced to stand trial in jail clothes, so *Randle* is not applicable to these facts and does not support Ramirez's contention that he did not receive a fair trial.

*D.L.N.* was an appeal from a deviate-sexual-intercourse conviction in which the defendant was 15 years old and the victim was three years old, and the defendant had been convicted in large part due to hearsay and highly prejudicial testimony from the victim's mother, the victim's father, and a minister, as well as testimony from a police officer concerning a polygraph test. 590 S.W.2d at 821–22. The Dallas Court of Appeals concluded that even though the appellant had failed to object each time the hearsay testimony was offered, they were convinced "[a]fter reading this record . . . that appellant should not be held to have waived the incompetency of this evidence because of the inadequacy of his counsel's objections." *Id.* at 823. *D.L.N.* reasoned that "[r]epeated objections to the hearsay were made; some were sustained and others overruled. Several motions for mistrial were made and overruled." *Id.* However, the Dallas Court of Appeals subsequently declined to apply *D.L.N.* and

22

recognized that it "is contrary to the well-established rule that a party must object every time allegedly inadmissible evidence is offered." *Jerell, Inc. v. Perkins*, No. 05-96-00592-CV, 1998 WL 19940, at *9 n.11 (Tex. App.—Dallas Jan. 22, 1998, no pet.) (not designated for publication). We agree with *Jerell* and to the extent *D.L.N.* may be read to disregard the obligation to preserve error, we decline to follow it. *See Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *Clay v. State*, 361 S.W.3d 762, 766 (Tex. App.—Fort Worth 2012, no pet.).

Because nothing in the testimony cited by Ramirez or our own review of the trial record reveals an unfair trial, we overrule Ramirez's third point regarding the denial of a fair trial. *Cf. Pearce v. State*, 513 S.W.2d 539, 543 (Tex. Crim. App. 1974) (explaining that the court "rarely reverses a conviction of crime solely because an improper question was asked"); *Lutwak v. United States*, 344 U.S. 604, 619, 73 S. Ct. 481, 490 (1953) ("A defendant is entitled to a fair trial but not a perfect one."). However, because we view the substance of Ramirez's contentions in point 3 as essentially complaints about evidence, in the interest of thoroughness, we analyze point 3 under the standard of review and law applicable to evidentiary rulings.

### 2. Standard of Review

We review a trial court's evidentiary rulings under an abuse-of-discretion standard. *See Jenkins*, 493 S.W.3d at 607. A trial judge's decision is an abuse of discretion only when it falls outside the zone of reasonable disagreement. *Winegarner*

*v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). An evidentiary ruling will be upheld if it is correct on any theory of law applicable to the case. *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006).

### 3. Error Preservation

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016). Further, the party must obtain an express or implicit adverse trial-court ruling or object to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Everitt v. State*, 407 S.W.3d 259, 262–63 (Tex. Crim. App. 2013); *Martinez v. State*, 17 S.W.3d 677, 686 (Tex. Crim. App. 2000).

To preserve error regarding the admission of evidence, a party must object as soon as the basis for the objection becomes apparent. Tex. R. Evid. 103(a)(1); *London v. State*, 490 S.W.3d 503, 507 (Tex. Crim. App. 2016); *Reyes v. State*, 361 S.W.3d 222, 228–29 (Tex. App.—Fort Worth 2012, pet. ref'd); *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011); *see also Lackey v. State*, 364 S.W.3d 837, 843–44 (Tex. Crim. App. 2012) (discussing policies underlying the timeliness requirement); *Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002) ("We have consistently held that the failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence. This is true even though the error may concern a constitutional right of the defendant." (citations omitted)). Generally, a party must

object each time the objectionable evidence is offered. *Geuder*, 115 S.W.3d at 13; *Martinez*, 98 S.W.3d at 193; *Clay*, 361 S.W.3d at 766.

### 4. Analysis of Point 3

Regarding the portions of quoted testimony from E.V.'s boyfriend, Officer Gipson, and Officer Harris, the record reveals that Ramirez failed to object, and on appeal, he fails to provide a reason why. Accordingly, any error in the admission of this testimony has not been preserved for our review. *See* Tex. R. App. P. 33.1; *Mack v. State*, 872 S.W.2d 36, 38 (Tex. App.—Fort Worth 1994, no pet.) (holding any error in admission of hearsay testimony was not preserved because defendant failed to make a timely objection and secure a ruling on the objection); *see also DeBlanc v. State*, 799 S.W.2d 701, 709 (Tex. Crim. App. 1990) ("It is axiomatic that before a party may assert error in any of the trial court actions that error must be brought to the trial court's attention.").

Regarding the three specific objections cited by Ramirez, they were sustained by the trial court, and Ramirez did not obtain an unfavorable subsequent ruling, so no adverse ruling appears in the record to preserve error. *See Darty v. State*, 709 S.W.2d 652, 653 (Tex. Crim. App. 1986) ("The issue before us is whether the admission of evidence by the trial court over objection implies that the objection is overruled, and error is preserved, when no precise ruling by the trial court appears in the record. We hold that absent an adverse ruling that appears of record, such an admission of evidence does not preserve error.").

We overrule Ramirez's third point.

### 5.  Analysis of Point 4

E.V.'s boyfriend testified at the punishment hearing that he wanted Ramirez to die in prison and that E.V. viewed Ramirez's conviction as a "victory . . . not only for her, but women all around and children all around and anyone who does not have a voice, period."  Ramirez is correct that a witness's opinion on what the length of a defendant's sentence should be is improper.  *See Wright v. State*, 962 S.W.2d 661, 663 (Tex. App.—Fort Worth 1998, no pet.) ("The argument that a witness may recommend a particular punishment to the trier of fact has been soundly rejected by the court of criminal appeals.").  However, Ramirez failed to object to the complained-of testimony at the punishment hearing.  Accordingly, he has failed to preserve any such error for our review.  *See Nino v. State*, 223 S.W.3d 749, 755 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding appellant failed to preserve error as to evidentiary objection during punishment phase).

We overrule Ramirez's fourth point.

## IV. Conclusion

Having overruled Ramirez's four points, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: January 17, 2019