

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-21-00171-CR

———————————————————

CHARLES RAY GARY, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 271st District Court
Wise County, Texas
Trial Court No. CR22323

---

Before Kerr, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

A jury found Appellant Charles Ray Gary guilty of continuous sexual abuse of a young child and assessed his punishment at life in prison. *See* Tex. Penal Code Ann. § 21.02(b), (h). Gary appeals his conviction, arguing in seven issues that the trial court reversibly erred by submitting a jury charge that did not properly instruct the jury on extraneous-offense evidence (issues 1–3); by admitting extraneous-offense evidence (issues 4–5); and by admitting hearsay testimony from a sexual-assault nurse examiner (issues 6–7). Because Gary forfeited his extraneous-offense evidence complaints and because the trial court did not otherwise err, we will affirm.

## I. Background

In late May 2020, sisters M.C. (Mae), who was seven years old, and J.C. (Joy), who was eight years old, made outcries to their mother E.C. (Mother) that Gary had touched and licked their genitals.

Mother took both girls to Cook Children's Medical Center in Fort Worth where Teresa Fugate, a certified sexual-assault nurse examiner (SANE), examined them on June 15, 2020. Nurse Fugate took a medical history from Mother and took a patient history from each girl separately without Mother present. During Mae's patient history, she told Nurse Fugate that starting when she "was like maybe three or four years old," Gary had "rubbed [her] front privates" "mostly under" her clothes and that he had "licked [her] private[s]" once. Joy pointed to her genital area and reported to Nurse Fugate that Gary had rubbed "down there" mostly under her clothes and

2

that "he would lick down there . . . a bunch." Because more than 120 hours had passed since the alleged abuse, the girls were considered "nonacute," which means that DNA could not be collected and that the girls were tested but not treated with medications to prevent infection. Nurse Fugate examined the girls, tested them for sexually transmitted infections, and found no infections or physical injuries.

In July 2020, a grand jury indicted Gary under two separate cause numbers for continuous sexual abuse of a young child. In CR22323, the victim was Mae. In CR22322, the victim was Joy. The case involving Mae proceeded to trial and is the subject of this appeal.

## II. Relevant Pretrial Matters

The State filed a notice of its intent to offer evidence of extraneous offenses and bad acts under Articles 37.07 and 38.37 of the Texas Code of Criminal Procedure and Texas Rules of Evidence 404(b) and 609 in which it listed, among other things, its intent to offer evidence of Gary's alleged sexual abuse of Joy. In response, Gary filed a written objection to the State's extraneous-offense evidence under Rules of Evidence 401, 402, 403, and 404(b). Gary also filed (1) a "Motion for Limiting Instruction (Rule 404b Evidence)," which asked the trial court to give the jury his proposed limiting instruction each time extraneous-offense evidence was admitted, and (2) "Defendant's Requested Jury Instruction[:] Limiting Instruction on 404(b) Evidence," which asked the trial court to include his proposed limiting instruction in the charge. The trial court never ruled on Gary's written objection to the State's

3

extraneous-offense evidence, but it granted both of Gary's limiting-instruction motions.

Gary also filed a motion in limine, seeking to exclude the following evidence and to prevent the State from referring to it until a hearing could be held outside the jury's presence to determine the evidence's admissibility:

> [A]ll extraneous crime or misconduct evidence, which is not alleged in the indictment, unless it can be shown by sufficient proof that [Gary] perpetrated such conduct, that this evidence is relevant to a material issue in the case, other than character conformity, and that its probative value outweighs its potential for prejudice.
>
> . . . [A]ll extraneous crime or misconduct evidence, notice of which was requested by [Gary], but not provided by the [S]tate as required by Rules 404(b) and 609(f) of the Texas Rules of Evidence, and Art[icle] 37.07(g) of the Texas Code of Criminal Procedure. Alternatively, any purported acts would not be admissible under Texas Rules of Evidence 403, 404(a),(1),(b), or 608.

The trial court granted Gary's limine motion.

### III. The Trial

After the jury was empaneled and sworn but before opening statements, the parties discussed the extraneous-offense evidence outside the jury's presence:

> [THE STATE]: Judge, in an effort not to violate any type of motions in limine, we have had some discussion and I have given the Defense counsel notice of our intent to call an extraneous victim. The Court is aware we're proceeding on the case that involves [Mae], and we intend -- we believe that it is permissible under 38.37 to bring up and discuss the abuse by the Defendant of her sister, [Joy], which is the subject matter of Indictment CR3222 -- I don't think that's the cause number. I'm sorry.
>
> THE COURT: 22322?

4

[THE STATE]: Yes, sir. Thank you.

[DEFENSE COUNSEL]: Your Honor, I think 38.37 does purport to allow that. However, we're going to object to that testimony in that I believe it violates the Equal Protection Clause of both the United States constitution and the State constitution. What 38.37 does, basically it was -- creates a subclass of citizens. It gives people who are accused of sexual cases involving children less protection and less rights in a criminal trial than it does a person, say, who is accused of a burglary of a habitation.

In a burglary of a habitation, the State's not allowed to bring in during the guilt-innocence phase other burglary victims. This statute -- and that's so that the State can have a -- the defense can have a fair trial. This statute specifically takes away rights that any other citizen would have if they were on trial for a crime in the state of Texas. So we make that objection.

THE COURT: All right. Your objection is overruled at this time.

[THE STATE]: Thank you.

THE COURT: Are we ready to go?

[DEFENSE COUNSEL]: Can we have a running objection on that so we don't have to keep interrupting the process?

THE COURT: Yes, I understand your objection. You do not have to object in front of the jury. That -- that would be if --

[DEFENSE COUNSEL]: When they get to the extraneous witness?

THE COURT: Yes, the sister of the alleged victim in this case.

[DEFENSE COUNSEL]: Thank you, sir.

After the jury was called into the courtroom, the trial court instructed the jury in relevant part as follows: "Some testimony or exhibits may be introduced for a

5

limited purpose. If that occurs, I will instruct you to consider the evidence only for that express limited purpose, and that is, again, what you would be obligated to do."

During the guilt–innocence phase, the State offered testimony from Mother, the girls' father, Nurse Fugate, Mae, Joy, and the girls' therapists. Through these witnesses, the jury heard about Gary's abuse of both Mae and Joy. Gary did not object to testimony regarding his conduct toward Joy on Rule 403 or 404 grounds, nor did he ask for a limiting instruction on that evidence.

Nurse Fugate testified that as part of her examinations, she took the girls' patient histories from them. When Nurse Fugate started testifying about what Mae had told her, Gary objected on hearsay grounds and argued that Rule 803(4)'s hearsay exception did not apply because Mae's statements to Nurse Fugate were not made for medical diagnosis or treatment:

> [Rule] 803(4) is an exception to the hearsay; however, it does not apply to this case. Our position is that these statements were elicited by the witness for the purpose of being used as evidence in a criminal case, which is exactly what they're trying to do here now. This witness testified this morning that this was a nonacute case and that she was there to test this child and not to treat this child.
>
> Therefore, since these statements were elicited not for the purposes of medical diagnosis and treatment, they are not -- it is hearsay.

The trial court overruled Gary's objection but gave him a running objection as to both girls' statements to Nurse Fugate. Nurse Fugate then testified about how Mae and Joy described for her Gary's abuse and about her subsequent examination and testing of the girls.

The jury charge did not include Gary's requested limiting instruction. During the charge conference, Gary objected only to the submission of aggravated sexual assault—a person intentionally or knowingly causing a child's sexual organ to contact another person's mouth—on the grounds that the evidence was insufficient to support its submission to the jury.[1] The trial court overruled the objection.

The jury found Gary guilty of continuous sexual abuse of a young child as charged in the indictment and, after hearing punishment evidence, assessed his punishment at life in prison. Gary has appealed.

## IV. Gary's Issues

On appeal, Gary raises seven issues:

1. The trial court erred by submitting a jury charge that failed to give a proper limiting instruction on extraneous-offense evidence.

2. The trial court erred by failing to include Gary's requested limiting instruction in the jury charge.

3. The incorrect jury charge egregiously harmed Gary.

4. The trial court erred by admitting inadmissible extraneous-offense evidence to the jury without first conducting the requisite Article 38.37 hearing.

---

[1]Here, the indictment alleged aggravated sexual assault and indecency with a child as component offenses of the continuous-sexual-abuse-of-a-child charge. *See* Tex. Penal Code Ann. §§ 21.02(b), (c)(2), (c)(4), 21.11(a)(1), (c)(1), 22.021(a)(1)(B)(iii). The jury charge instructed and charged the jury accordingly and submitted indecency with a child as a lesser included offense of continuous sexual abuse of a child.

5. The trial court erred by admitting extraneous-offense evidence because the danger of unfair prejudice substantially outweighed the evidence's probative value.

6. The trial court erred by admitting Nurse Fugate's hearsay testimony under Rule 803(4)'s hearsay exception for statements made for medical diagnosis or treatment.

7. The admission of Nurse Fugate's hearsay testimony egregiously harmed Gary.

We will address Gary's fourth and fifth issues first because doing so aids in our disposition of this appeal.

## V. Admission of Extraneous-Offense Evidence

Gary's fourth and fifth issues challenge the trial court's admission of extraneous-offense evidence regarding his sexually abusing Joy under Code of Criminal Procedure Article 38.37. Within these two issues, he argues that the trial court abused its discretion by admitting evidence concerning his abusing Joy because (1) the trial court failed to hold the required Article 38.37 hearing to determine whether the evidence was adequate to support a jury finding that he committed the separate offenses beyond a reasonable doubt; (2) the evidence's probative value was substantially outweighed by the danger of unfair prejudice; and (3) the trial court failed to give a contemporaneous limiting instruction when the evidence was admitted. We address each of these arguments in turn.

Rule 404(b)(1) disallows evidence of crimes, wrongs, or other acts solely to prove a person's character to show that the person acted in conformity with that character on a particular occasion.[2] Tex. R. Evid. 404(b)(1). Such extraneous-offense evidence is statutorily admissible, however, in continuous-abuse-of-a-young-child and indecency-with-a-child cases. *See* Tex. Code Crim. Proc. Ann. art. 38.37. In such cases, "[n]otwithstanding Rules 404 and 405," evidence that a defendant has committed a *separate* such sexual offense against a child may be admitted "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." *Id.* § 2(b). But before such evidence may be introduced, the trial judge must conduct a hearing outside the jury's presence to determine whether the evidence is adequate to support a jury finding that the defendant committed the separate offense beyond a reasonable doubt. *Id.* § 2-a.

Although the trial court here did not conduct the required hearing, Article 38.37's hearing requirement is subject to general preservation requirements and can thus be forfeited. *See, e.g., Corporon v. State*, 586 S.W.3d 550, 560 (Tex. App.—Austin 2019, no pet.); *Stephens v. State*, Nos. 02-15-00046-CR, 02-15-00047-CR, 2016 WL 2586639, at *7 (Tex. App.—Fort Worth May 5, 2016, pet. ref'd) (mem. op.,

---

[2]But this evidence may be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tex. R. Evid. 404(b)(2).

not designated for publication). To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). Further, the party must obtain an express or implicit adverse trial-court ruling or object to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Dixon v. State*, 595 S.W.3d 216, 223 (Tex. Crim. App. 2020).

Here, Gary failed to object to the lack of an Article 38.37 hearing. He has thus failed to preserve that complaint for our review. *See, e.g.*, *Corporon*, 586 S.W.3d at 560; *Stephens*, 2016 WL 2586639, at *7.

Next, Gary complains that the trial court abused its discretion by admitting the extraneous-offense evidence because the danger of unfair prejudice substantially outweighed the evidence's probative value. *See* Tex. R. Evid. 403. Even if extraneous-offense evidence is relevant and admissible under Article 38.37, that evidence can be excluded under Rule 403 if the danger of unfair prejudice substantially outweighs the evidence's probative value. *See Wells v. State*, 558 S.W.3d 661, 669 (Tex. App.—Fort Worth 2017, pet. ref'd); *Martin v. State*, 176 S.W.3d 887, 895 (Tex. App.—Fort Worth 2005, no pet.); *see also* Tex. R. Evid. 403. A trial court must conduct a Rule 403 balancing test upon a proper objection or request. *See Belcher v. State*, 474 S.W.3d 840, 847 (Tex. App.—Tyler 2015, no pet.); *Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd). But, as the State notes, Gary failed to preserve

10

this complaint by not objecting to the extraneous-offense evidence on Rule 403 grounds.

To preserve error in the admission of evidence, a party generally must object each time the objectionable evidence is offered. *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *Clay v. State*, 361 S.W.3d 762, 766 (Tex. App.—Fort Worth 2012, no pet.). Gary contends that although he did not object to the extraneous-offense evidence on Rule 403 grounds when that evidence was offered at trial, he nevertheless preserved his 403 complaint through (1) his written objection to the admission of the State's extraneous-offense evidence; (2) his motion in limine; and (3) his objection to evidence admitted under Article 38.37 as violative of his Equal Protection rights. We disagree.

Neither Gary's written objection nor his motion in limine sufficed to preserve his Rule 403 complaint. *First*, the trial court never ruled expressly or implicitly on his written objection—which was based in part on Rule 403—so he was required to renew that objection when the extraneous-offense evidence was offered. *Cf.* Tex. R. Evid. 103(b) ("When the court hears a party's objections outside the presence of the jury and rules that evidence is admissible, a party need not renew an objection to preserve a claim of error for appeal."). Gary did not do so. *Second*, motions in limine do not preserve error. *See Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008) ("A motion in limine . . . is a preliminary matter and normally preserves nothing for

appellate review. For error to be preserved with regard to the subject of a motion in limine, an objection must be made at the time the subject is raised during trial." (citation and emphasis omitted)); *Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007). This is true whether the motion is granted or denied, *see Griggs v. State*, 213 S.W.3d 923, 926 n.1 (Tex. Crim. App. 2007); *Swilley v. State*, 465 S.W.3d 789, 795 (Tex. App.—Fort Worth 2015, no pet.), and the party must object when the evidence is offered at trial, *Fuller*, 253 S.W.3d at 232; *Roberts*, 220 S.W.3d at 533. Here, although the trial court granted Gary's motion in limine, he did not object when the extraneous-offense evidence was offered at trial.

Like Gary's written objection and limine motion, Gary's objection to the State's Article 38.37 evidence on Equal Protection grounds (and his running objection[3] on that basis) was insufficient to preserve his Rule 403 complaint. An objection must be sufficiently specific to preserve a complaint for appellate review. *See* Tex. R. App. P. 33.1(a)(1)(A). "The two main purposes of requiring a specific objection are to inform the trial judge of the basis of the objection so that he has an opportunity to rule on it and to allow opposing counsel to remedy the error." *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *see Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). Preservation does not require "magic language," however, but turns only on

---

[3]A defendant's obtaining a running objection is an exception to the contemporaneous-objection rule. *Geuder*, 115 S.W.3d at 13; *Ethington v. State*, 819 S.W.2d 854, 858–59 (Tex. Crim. App. 1991).

whether the trial court understood the basis of the objection. *Vasquez v. State*, 483 S.W.3d 550, 554 (Tex. Crim. App. 2016); *State v. Rosseau*, 396 S.W.3d 550, 555 (Tex. Crim. App. 2013).

Furthermore, an objection preserves only the specific ground cited. Tex. R. App. P. 33.1(a)(1)(A); Tex. R. Evid. 103(a)(1)(B); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g); *see also Fierro v. State*, 706 S.W.2d 310, 317–18 (Tex. Crim. App. 1986) (holding that general objection is insufficient to apprise trial court of complaint urged and thus preserves nothing for review). And the complaint made on appeal must comport with the complaint made in the trial court or the error is forfeited. *Clark*, 365 S.W.3d at 339; *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."); *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial.").

Here, Gary objected to the State's Article 38.37 evidence regarding Joy as follows:

> Your Honor, I think 38.37 does purport to allow that [evidence]. However, we're going to object to that testimony in that I believe it violates the Equal Protection Clause of both the United States constitution and the State constitution. What 38.37 does, basically it was -- creates a subclass of citizens. It gives people who are accused of sexual cases involving children less protection and less rights in a criminal trial than it does a person, say, who is accused of a burglary of a habitation.

13

In a burglary of a habitation, the State's not allowed to bring in during the guilt-innocence phase other burglary victims. This statute -- and that's so that the State can have a -- the defense can have a fair trial. This statute specifically takes away rights that any other citizen would have if they were on trial for a crime in the state of Texas. So we make that objection.

Gary's objection was that Article 38.37 violated his Equal Protection rights under the United States and Texas Constitutions, not that the State's Article 38.37 evidence's probative value was substantially outweighed by the danger of unfair prejudice. Even so, Gary argues that given that (1) the objection was made in the context of the State's bringing up his limine motion—which raised Rule 403—and (2) his written Rule 403 objection stated that it was made to preserve his Equal Protection rights under the United States and Texas Constitutions, his objection sufficed to preserve his Rule 403 complaint. We cannot agree. The basis for Gary's objection was the constitutionality of Article 38.37, which was insufficient to apprise the trial court that he was objecting on Rule 403 grounds. And he has not raised his Equal Protection argument on appeal. Gary thus failed to preserve his Rule 403 complaint for our review.

Finally, Gary notes that "[t]he relevant and substantive testimony of five out of seven of the State's witnesses introduced and emphasized highly prejudicial testimony of the extraneous offense" and complains that the trial court thus erred by failing to give a contemporaneous limiting instruction each time the extraneous-offense evidence was admitted. Rule 105 provides that, when the trial court admits evidence

14

that is admissible for one purpose but not for another, "the court, on request, must restrict the evidence to its proper scope and instruct the jury accordingly." Tex. R. Evid. 105(a). A defendant must request an extraneous-offense limiting instruction under Rule 105 when the evidence is admitted during the guilt–innocence phase. *Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007); *Hammock v. State*, 46 S.W.3d 889, 893–94 (Tex. Crim. App. 2001). If a defendant does not, the evidence is admitted for all purposes. *Delgado*, 235 S.W.3d at 251; *Hammock*, 46 S.W.3d at 892, 895; *see also* Tex. R. Evid. 105(a).

Any error in the admission of evidence that is admissible for one purpose, but not for the other, is preserved "only if the party requests the court to restrict the evidence to its proper scope and instruct the jury accordingly." Tex. R. Evid. 105(b)(1). A pretrial request for a limiting instruction is insufficient to preserve a complaint that the trial court failed to give a limiting instruction. *See Taylor v. State*, No. 06-22-00063-CR, 2022 WL 16704396, at *4 n.8 (Tex. App.—Texarkana Nov. 4, 2022, no pet.) (mem. op., not designated for publication); *see also Reeves v. State*, 99 S.W.3d 657, 658–59 (Tex. App.—Waco 2003, pet. ref'd) ("There is nothing in the plain language of Rule 105 or the case law that requires the trial court, upon a pre-trial request, to recognize each instance of extraneous[-]offense evidence and deliver a limiting instruction at each instance."). Because Gary did not ask for a limiting instruction when the extraneous-offense evidence was admitted, he cannot complain

on appeal about the trial court's not giving that instruction. *See* Tex. R. Evid. 105(b)(1).

Because Gary failed to preserve his complaints regarding the trial court's admission of extraneous-offense evidence regarding his abusing Joy, we overrule his fourth and fifth issues.

## VI. The Jury Charge

Gary's first, second, and third issues challenge the trial court's jury charge. In his first issue, Gary asserts that the trial court erred by submitting a jury charge that failed to give a proper limiting instruction on the extraneous-offense evidence. Gary complains in his second issue that the trial court erred by failing to include his requested limiting instruction in the charge. And finally, Gary contends in his third issue these errors caused him egregious harm.

We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In reviewing a jury charge, we first determine whether error occurred; if not, our analysis ends. *Id.* We address Gary's first and second issues in turn, and because we conclude that no error occurred, we do not reach his third issue. *See id.*

Gary asserts in his first issue that, because indictments involving both girls were discussed at trial and because there was considerable evidence concerning his abusing Joy, the following abstract paragraphs of the jury charge misstated the law and created confusion:

16

## II.

A person commits the offense of Continuous Sexual Assault of a Young Child if, during a period that is 30 days or more in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are *committed against one or more victims . . . .*

. . . .

## V.

. . . .

You are further instructed that in order to find the defendant guilty of the offense of continuous sexual abuse of a young child, you are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. However, *in order to find the defendant guilty of the offense of continuous abuse of a young child, you must unanimously agree that the defendant*, during a period that is 30 or more days in duration, on or about [the] 15th day of April, 2016 through and including the 28th day of May, 2020 *as charged in the indictment, committed two or more acts of sexual abuse.*

. . . .

You are instructed that if there is any testimony before you in this case regarding the defendant having committed offenses, if any, other than the offenses alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed. [Emphases added.]

Gary argues that the instruction in section II "creates confusion, in particular because there was no instruction about how the jury could consider the extraneous offense." He further argues that the jury could have interpreted the instruction in section V to mean that it "could rely on one or more of the discussed offense[s] against [Joy] to convict [him]," and that "[b]ecause there were no charges in the

17

indictment for any victim other than [Mae], [the instruction] misstates the applicable law for these facts."

But Gary's argument ignores the application paragraphs, which provided:

Now bearing in mind the foregoing instructions, if you find and believe from the evidence, beyond a reasonable doubt, that the defendant, CHARLES RAY GARY, on or about the 15th day of April, 2016 through and including the 28th day of May, 2020, in the County of Wise and State of Texas, did then and there, during [a] period that was 30 or more days in duration, when the defendant was at least 17 years of age or older, knowingly commit two or more acts of sexual abuse against [Mae], child younger than 14 years of age, said acts of sexual abuse being more fully described as follows:

1. Aggravated sexual assault of child by knowingly caus[ing] the sexual organ of [Mae], a child who was then and there younger than 14 years of age and not the spouse of the defendant, to contact the mouth of the defendant.

2. Indecency with child by sexual contact with the intent to arouse or gratify the sexual desire of said defendant [by] engag[ing] in sexual contact with [Mae], a child younger than 17 years of age and not the spouse of the defendant, by touching the genitals of said [Mae] with his hand.

Unless you so find beyond a reasonable doubt. or if you have a reasonable doubt thereof, you will acquit the Defendant of the offense of Continuous Sexual Abuse of a Young Child and say by your verdict not guilty of Continuous Sexual Abuse of a Young Child. If you do not so find, or if you have a reasonable doubt thereof, you will next consider whether the Defendant is guilty of the lesser included offense of Indecency with a Child.

Now bearing in mind the foregoing instructions, if you find and believe from the evidence, beyond a reasonable doubt, that the defendant, CHARLES RAY GARY, on or about the 15th day of April, 2016 through and including the 28th day of May, 2020, in the County of Wise and State of Texas, did then and there, with the intent to arouse or gratify the sexual desire of said defendant, knowingly engage in sexual

18

contact with [Mae] by touching the genitals of [Mae], a child younger than 17 years of age and not the spouse of the defendant then you will find the defendant guilty of the offense of Indecency With a Child Sexual Contact.

The application paragraphs make clear that the jury could find Gary guilty of only the offenses involving Mae. We thus conclude that the abstract paragraphs—when considered in conjunction with the application paragraphs—do not misstate the law and are not confusing. *See Dinkins v. State*, 894 S.W.2d 330, 340 (Tex. Crim. App. 1995) ("When we review a charge for alleged error, we must examine the charge as a whole instead of a series of isolated and unrelated statements."). We overrule Gary's first issue.

Gary argues in his second issue that the trial court erred by failing to include his requested Rule 404 limiting instruction.[4] He alternatively asserts that although Article 38.37 allows extraneous-offense evidence to be admitted for character and character-

---

[4]Gary requested that the following Rule 404 limiting instruction be included in the charge:

> The Defendant is on trial solely on the charge contained in the indictment. The State has introduced in evidence an act or acts other than the one charged in the indictment. With reference to those other acts, you are instructed that said evidence was admitted only for the purpose of showing, if it does, (the specific purpose advocated by the State) of the Defendant. You cannot consider said testimony for any purpose unless you find beyond a reasonable doubt that the Defendant committed such other act or acts, if any were committed. If you so find beyond a reasonable doubt, you can consider the evidence only for the purpose allowed. The evidence may not be considered to prove the character of the Defendant in order to show that he acted in conformity therewith on the occasion in question.

conformity purposes, the charge, (1) "at a minimum, should have emphasized to the jury that the evidence about the extraneous offense[s] could not itself be a basis for conviction, but only the indicted offenses" and (2) "should have tracked the language of [Article 38.37] and limited the jury to only consider[ing] the extraneous offense for its bearing on relevant matters and clarified that the only offenses that could form the basis of the verdict were those in the indictment."

When, as here, the defendant does not timely request a limiting instruction, the evidence is admitted for all purposes. *See Delgado*, 235 S.W.3d at 251 (explaining that to hold otherwise would allow the jury to sit through most of the trial under the mistaken belief that certain evidence is admissible for all purposes when, in fact, it is not). A trial court does not err by failing or refusing to give a limiting instruction on extraneous-offense evidence in the jury charge during the guilt–innocence phase if the defendant did not request a limiting instruction when the trial court admitted the evidence. *See id.* ("[A] limiting instruction concerning the use of extraneous[-]offense evidence should be requested, and given, in the guilt-stage jury charge only if the defendant requested a limiting instruction at the time the evidence was first admitted."); *Gunter v. State*, 327 S.W.3d 797, 802 (Tex. App.—Fort Worth 2010, no pet.) (applying *Delgado* to hold that appellant forfeited his complaint on appeal).

As noted, Gary did not request a limiting instruction on the extraneous-offense evidence regarding Joy when it was admitted. The evidence was thus admitted for all purposes, and the trial court was not obligated to include any limiting instruction in

the guilt–innocence charge. *See Delgado*, 235 S.W.3d at 251; *see also Williams v. State*, 273 S.W.3d 200, 230 (Tex. Crim. App. 2008) ("A failure to request a limiting instruction at the time evidence is presented renders the evidence admissible for all purposes and relieves the trial judge of any obligation to include a limiting instruction in the jury charge."). Accordingly, we conclude that the trial court did not err by not including Gary's requested limiting instruction or any instruction limiting the purposes for which the jury could consider the evidence. We thus overrule Gary's second issue.

Because we have concluded that there was no charge error, we need not address Gary's third issue. *See Kirsch*, 357 S.W.3d at 649; *see also* Tex. R. App. P. 47.1.

### VII. Admission of Nurse Fugate's Hearsay Testimony

Gary's sixth and seventh issues challenge the trial court's admission of Nurse Fugate's hearsay testimony regarding Mae's and Joy's patient histories, which the State argued was admissible under Rule 803(4)'s medical-diagnosis-or-treatment exception to the hearsay rule. Gary argues in his sixth issue that because these statements were inadmissible under this hearsay exception, the trial court erred by overruling his hearsay objection and by allowing Nurse Fugate, a SANE, to testify about what Mae and Joy had told her. Gary complains in his seventh issue that the trial court's admission of this inadmissible evidence caused him egregious harm.

### A. Standard of review

We review a trial court's evidentiary ruling on a hearsay objection for an abuse of discretion. *See, e.g.*, *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003);

21

*Coffin v. State*, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994). We will not reverse an evidentiary ruling unless it is outside the zone of reasonable disagreement. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). If the ruling is correct under any applicable theory of law, we will affirm it regardless of the trial court's reason for the ruling. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016).

## B. Admissibility of a child's hearsay statements to a SANE

Rule 803(4) allows statements "made for—and . . . reasonably pertinent to—medical diagnosis or treatment" that "describe[ ] medical history; past or present symptoms or sensations; their inception; or their general cause" to be admitted into evidence even though they are hearsay. Tex. R. Evid. 803(4). For evidence to be admissible under this exception, the proponent must show (1) that the declarant "was aware that the statements were made for purposes of medical diagnosis or treatment and that proper diagnosis or treatment depended upon the veracity of the statements" and (2) "that the statements are pertinent to diagnosis or treatment, i.e., that it was reasonable for the care provider to rely on the statements in diagnosing or treating the declarant." *Lumsden v. State*, 564 S.W.3d 858, 883 (Tex. App.—Fort Worth 2018, pet. ref'd) (citing *Taylor v. State*, 268 S.W.3d 571, 588–89, 591 (Tex. Crim. App. 2008)).

In cases involving medical diagnosis and treatment—as opposed to mental-health treatment and therapy—courts generally presume that "children of a sufficient age or apparent maturity" will understand that the medical provider's questions are designed to elicit accurate information and that veracity will serve their best interest.

*Taylor*, 268 S.W.3d at 589. In applying the test, courts thus generally review the record for "evidence that would *negate* such an awareness, even while recognizing that the burden is on the proponent of the hearsay to show that the Rule 803(4) exception applies." *Id.* Absent such negative evidence, the Texas Court of Criminal Appeals does "not require[ ] the proponent of statements to a SANE to affirmatively demonstrate that the declarant was aware of the purpose of the statements and the need for veracity." *Lumsden*, 564 S.W.3d at 884; *see Taylor*, 268 S.W.3d at 589.

## C. Analysis

Gary attacks both of Rule 803(4)'s admissibility requirements. *First*, he asserts that the record negates the presumption that the girls understood the need for truthfulness because of Mae's and Joy's ages (seven and eight years old, respectively); because the girls may have been repeating the description of events that Mother gave to Nurse Fugate; and because there is no evidence that Nurse Fugate told the girls "the purpose of the examination or impressed upon them the importance to tell the truth." *Second*, he contends that the girls' statements were not pertinent to medical diagnosis or treatment and were "solicited for the purposes of testifying at trial" because Nurse Fugate's testing and treatment did not rely on the girls' statements.

At trial, Nurse Fugate explained the sexual-assault-examination procedure. When a child and parent come into the clinic, Nurse Fugate "usually show[s] them around." She talks to the parent first to get the child's medical history and to "go over what they know about what's happened." She then meets with the child alone to get a

23

patient history, during which time she talks to the child and "go[es] into what's . . . gone on" and "why they're here today." According to Nurse Fugate, the patient history's purpose is for medical diagnosis and proper treatment, regardless of whether the child is acute or nonacute, and the history "helps [her] determine what [she's] looking for, what [she] needs to test, [and] what to do, basically." Nurse Fugate then explains to the child that she is going to do a checkup; performs a "head-to-toe checkup" on the child; examines the child's anal and genital areas looking for any signs of infection, injury, or healed injury; and performs any necessary testing.

The record here does not reflect whether the girls were present when Nurse Fugate talked to Mother. Nurse Fugate testified that when she talked to the girls alone, she explained to both of them that they were there for a medical checkup and diagnosis and treatment. When Nurse Fugate asked Mae why Mae was there, she responded, "because of the inappropriate things that happened" and "inappropriate touching," and then, after additional questioning from Nurse Fugate, Mae described Gary's abuse and where and when it had happened. Joy similarly responded to Nurse Fugate's questions: Joy was there "because of [Gary], but we don't see him anymore," and when asked what happened, Joy recounted Gary's abuse. Nothing in the record negates Mae's or Joy's understanding that the purpose of their statements was for medical diagnosis or treatment and that they needed to be truthful. *See Beheler v. State*, 3 S.W.3d 182, 188–89 (Tex. App.—Fort Worth 1999, pet. ref'd) (stating that "there is no requirement that a witness expressly state that the hearsay declarant recognized the

24

need to be truthful in her statements for the medical[-]treatment exception to apply" and holding that evidence was sufficient to support conclusion that seven-year-old child understood the need for veracity during SANE exam where process was explained and child was interviewed alone, child knew why she was there, and SANE testified that she interviewed child for purposes of medical exam); *see also Westbrook v. State*, No. 10-19-00119-CR, 2021 WL 3773474, at *9–10 (Tex. App.—Waco Aug. 25, 2021, pet. ref'd) (mem. op., not designated for publication) (concluding that nothing in the record supported conclusion that eight-year-old child was unaware that the purpose of SANE's questions was to provide medical treatment or diagnosis or was unaware of the necessity to be truthful where child described incidents of sexual abuse after SANE explained who SANE was and the purpose of the visit (a medical examination), obtained a medical history from the child, and asked the child if she knew why she was there). We therefore conclude that the girls' statements to Nurse Fugate satisfy the admissibility test's first requirement.

We similarly conclude that the girl's statements satisfy the second requirement: the statements were pertinent to medical diagnosis or treatment. *See Lumsden*, 564 S.W.3d at 883. We disagree with Gary's assertion that the girls' histories were taken solely for use in court and weren't pertinent for treatment or diagnosis. Nurse Fugate agreed that the "core principle" for a medical provider was to take a patient history and testified that "[w]ithout a history, we don't know what we're dealing with." Although Nurse Fugate testified about her general exam procedures, she

testified as follows about the purpose of taking a patient history from both girls in this case:

> [State]: Specifically, what was the purpose of taking a history from both of those young ladies?
>
> [Nurse Fugate]: So that I would be able to figure out what I needed to do and come up with a game plan for diagnosis and treatment.
>
> Q. All right. So your purpose in asking for a history was to obtain the proper treatment or course of treatment for both children?
>
> A. Yes.

When the trial court indicated that it wanted to know what Nurse Fugate did in this case, the following exchange occurred:

> Q. [By the State] So in this particular case, then, you took a history; is that correct?
>
> A. I did.
>
> Q. After you took a history, then what did you do next?
>
> A. So after the history, then I formulate what I'm going to do.
>
> Q. And what did you do?
>
> A. So I do the checkup based on the contact that they describe. I did testing for gonorrhea and chlamydia.
>
> . . . .
>
> Q. . . . And so based on their disclosures, that's where you looked?
>
> A. Yes.
>
> Q. All right. And so specifically were you looking for a sexually transmitted disease -- gonorrhea and chlamydia?

A. I was.

. . . .

Q. All right. Did you do any other testing, any other blood work on these particular girls?

A. No. Based on the contact that they told me, that was the one that we needed to do.

Nurse Fugate additionally testified that she performed a "head-to-toe checkup" on each girl and then examined and photographed each girl's genital and anal areas. Neither girl had any physical injuries, healed injuries, or obvious infections. The lack of physical injuries did not surprise Nurse Fugate because of the contact the girls had described. And because the girls did not test positive for gonorrhea or chlamydia, there was no reason to treat them with medication. On this record, we conclude that it was reasonable for the trial court to conclude that the girls' statements to Nurse Fugate were "pertinent to diagnosis or treatment, i.e., that it was reasonable for the care provider to rely on the statements in diagnosing or treating the declarant." *Lumsden*, 564 S.W.3d at 883.

Having concluded that the trial court could have reasonably concluded that the challenged hearsay statements fall within Rule 803(4)'s hearsay exception, we hold that the trial court did not abuse its discretion by admitting them. Accordingly, we overrule Gary's sixth issue, and we thus do not address his seventh issue. *See* Tex. R. App. P. 47.1.

## VIII. Conclusion

Having overruled Gary's dispositive issues, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: April 6, 2023

28